[No. 29923. Department One. July 18, 1947.]

WASHINGTON CHOCOLATE COMPANY, *Respondent,* v.
ARCHIBALD J. KENT, *Appellant.*[1]

*Kumm & Hatch,* for appellant.

*Emory & Howe,* for respondent.

[1]Reported in 183 P. (2d) 514.

Millard, J.—Defendant Kent, a sole trader, doing business as Commercial Warehouse Company, operates a warehouse building containing five stories and basement located on the east of Alaska way between Yesler way and Washington street in Seattle. The building is located just across the street from the water front.

On or about September 1, 1942, Washington Chocolate Company, a domestic corporation, rented the north half of the basement, and adjoining space known as the vault, from Kent. The tenancy was an oral month-to-month one at a monthly rental of one hundred dollars. The Washington Chocolate Company is a purchaser and processor of chocolate. For a number of years, it has been obtaining cocoa beans by importation, has bought them and stored them, pending their eventual processing into chocolate products.

During the existence of the tenancy, plaintiff stored certain cocoa beans in burlap sacks in the rented premises, the manual work of receipt, storage, and periodic withdrawal being performed by individuals employed through defendant Kent. Various shipments into and out of the premises were made from time to time, so that the quantity of cocoa beans stored therein varied from time to time. All cocoa beans so stored by plaintiff were inspected by representatives of plaintiff before storage on the leased premises and, when so stored, were in good condition and not infested with rodents.

The other half of the basement and the other floors of the warehouse were leased by Kent to other users of warehouse space. The tenant had no control over any of the approximately ninety per cent of the building not rented by him. Kent maintained his office in the warehouse and at all times had control of the building. The beans had been inspected on their importation by the Federal pure food and drug administration inspector and were inspected on their arrival by representatives of the brokers through whom the purchases were made. During the period of the rental, representatives of the tenant went to the leased

premises monthly for purposes of inventory, which involved counting the sacks only, and no signs of rats were observed.

On or about June 10, 1944, the leased premises were visited by inspectors of the food and drug department of the Federal security administration, at which time it appeared that the premises and the sacks of cocoa beans stored therein by the tenant were infested by rats, in that rat pellets, rat tracks, and rat nests were present. On or about July 15, 1944, the discovery of rat-infestation was made known to the tenant by the condemning authorities. This was the first knowledge on the part of the tenant of the rat-infestation. The tenant immediately protested to its lessor, who agreed and undertook to remedy the condition of the premises in such manner as to eliminate the condition of infestation described above. The city rat-catcher caught three rats and left with no assurance that the premises were then free of rats or would be so in the future. The landlord did nothing to ratproof the premises except as to one of several pipe holes. He had kept cats, but they merely added to the contamination and were removed.

Subsequent to July 15, 1944, and until the leased premises were abandoned by the tenant the third week of September, 1944, the same condition of rat-infestation continued, by reason of which, on August 19, 1944, there was issued a libel and seizure of one thousand bags of the tenant's cocoa beans on the premises by the United States government. In that libel action, the tenant appeared as claimant. A decree of condemnation of approximately three hundred sacks of the beans as rodent-infested was issued, and to secure the release of the remainder of the tenant's stored cocoa beans, the tenant was required to post a cash bond to secure the faithful performance of the segregation and destruction of the contaminated cocoa beans from the remainder of the stored beans. In all, 6,382 pounds of beans, of the market value at that time of $647.50, were destroyed. Service charge of the government agency necessarily incurred and paid amounted to $39.75. Necessary and reasonable court and attorneys' fees in the condemnation action

against the beans amounted to $110.38. The items aggregate $797.63.

Because of the continued infestation and unsanitary condition, the tenant, during the latter part of July and during August and September, 1944, proceeded to remove from the premises what undamaged stock remained, which removal was completed in the third week of September and was made with the knowledge of the landlord, who provided the labor necessary therefor.

Plaintiff brought this action to recover a money judgment against defendant landlord for damages in being constructively evicted from the premises leased by defendant to plaintiff. Defendant, who did not bill plaintiff beyond the month of September, 1944, until this action was instituted, filed his cross-complaint for rental of three months on the ground there was no constructive eviction of plaintiff or liability on defendant's part for the rat damage to the property of plaintiff.

The cause was tried to the court, which found the facts as recited above and denied recovery for rent for the months of September, October, and November, 1944, and for labor supplied in conjunction with the segregation and removal of the beans for destruction. The trial court further found that the existence of the infested condition of the leased premises and the continuation thereof without remedy from July to and through the third week of September, 1944, constituted the existence of and maintenance by defendant of a nuisance in connection therewith, and as the direct and proximate result of the existence of such nuisance plaintiff was constructively evicted from the leased premises. From judgment entered in favor of plaintiff in the amount of $797.63, representing the value of goods destroyed and other costs as itemized above, defendant appealed.

Counsel for appellant contend that there was no nuisance or constructive eviction. Appellant invokes the rule that, without an express contract to the contrary, a tenant takes the demised premises as he finds them, and that there is no implied warranty on the landlord's part that they are

safe or even fit for the purpose for which they are rented. *Howard v. Washington Water Power Co.*, 75 Wash. 255, 134 Pac. 927, 52 L. R. A. (N.S.) 578; *Miller v. Vance Lbr. Co.*, 167 Wash. 348, 9 P. (2d) 351. Appellant also cites *Clark v. Yukon Inv. Co.*, 83 Wash. 485, 145 Pac. 624, Ann. Cas. 1916E, 625, to the effect that, in the absence of warranty or express covenant to repair, a landlord is under no legal duty to repair the rented premises.

It is urged that, while recognizing these principles of law, the trial court erroneously held appellant liable on the basis of nuisance in breaching a covenant of quiet enjoyment and resulting in constructive eviction. Counsel for appellant argue that, before there is a nuisance that breaches the implied covenant of quiet enjoyment which results in constructive eviction, there must be responsibility on the part of the landlord for such nuisance, or at least a failure on his part to perform the duty owed to the tenant.

■ There is substantial evidence supporting the findings that the cocoa beans were not rodent-infested upon their arrival; that respondent was not aware of the rat-infestation until the middle of July, 1944, upon receipt of which information respondent immediately protested to appellant, who undertook to remedy the infestation. Appellant failed to remedy the infestation, and its continuance constituted a nuisance by which respondent was constructively evicted. There is no evidence that the premises were rat-infested when first rented. The action was not for want of repair, but was because of the presence of rats which the landlord was obligated to remove by poisoning, etc.; that is, he owed the legal duty to the tenant to keep the premises free from rats.

■ In all tenancies there is an implied covenant of quiet enjoyment of the leased premises. See annotations in 63 A. L. R. 1258 *et seq.* Appellant's position is that this covenant of quiet enjoyment was not breached because the landlord was not responsible for the presence of the rats. The cases upon which appellant relies are distinguishable on a number of grounds: The infestation was of such

limited numbers as not to constitute a nuisance. The lease was of an entire structure. The tenant caused the nuisance. No opportunity was given to the lessor to correct the condition. It would have been impossible for the lessor to correct the nuisance without trespass. The nuisance was one outside the premises. The lessor did not have control of the building.

In *Barnard Realty Co. v. Bonwit*, 155 App. Div. 182, 139 N. Y. Supp. 1050, it was held that night noises made by rats in the walls and ceilings of a tenement, coupled with an offensive odor which increased until the premises became untenantable, amounted to a constructive eviction, since the tenant could not make the place habitable by pulling down the walls and ceilings to eliminate the rodents. *Jacobs v. Morand*, 59 Misc. 200, 110 N. Y. Supp. 208, in which a case of mere bugs and ants was held not to be sufficient to establish a case of constructive eviction, is different from the case of rats, as the tenant may not tear down walls and ceilings in their extermination. The court said:

"Such tenants have, and can have, control only of the inside of their own limited demised premises. Conditions unknown to the ancient common law are thus created. This requires elasticity in the application of the principles thereof. An intolerable condition which the tenant neither causes nor can remedy, seems to me warrants the application of the doctrine of constructive eviction."

In *Batterman v. Levenson*, 102 Misc. 92, 168 N. Y. Supp. 197, the court cited *Barnard Realty Co. v. Bonwit, supra,* and said:

"It seems now to be recognized that the presence of rats in great numbers in a building rented to several tenants, the control of the lower part of which is retained by the landlord, may constitute such a nuisance as to justify a tenant in abandoning the demised premises, even without direct proof that the rats came from or through a part of the building under the landlord's control. . . .

"The duty of the landlord to protect his tenant from annoyance by pests of this nature remained, because the tenant was powerless to protect himself. Had the tenant leased the whole building the case would have been entirely different. So, also, would it have been, if the pest had been

of a nature which the tenant could have coped with within his own part of the building."

See, also, *Hancock Const. Co. v. Bassinger,* 198 N. Y. Supp. 614, to the effect that, where an apartment was infested with numerous bedbugs, a condition not caused by the tenant, and which the tenant could not remedy, and the landlord failed in its attempt to remedy, constructive eviction is established and the tenant is authorized to vacate the apartment prior to the expiration of the term.

In *Ray Realty Co. v. Holtzman,* 234 Mo. App. 802, 119 S. W. (2d) 981, the case of *Jacobs v. Morand, supra,* is criticized by the Missouri court of appeals, which states that the sounder and more modern view is expressed in *Barnard Realty Co. v. Bonwit, supra.*

In *Delamater v. Foreman,* 184 Minn. 428, 239 N. W. 148, it is held that, in the absence of a contrary provision in the written lease for an apartment in a multiple apartment building, the landlord impliedly covenants that the premises will be habitable, and that bedbugs coming in great numbers into the apartment through cracks and loose boards in the floor from sources under the jurisdiction of the landlord may cause such distress to the tenant as to constitute constructive eviction, the landlord neglecting his duty in reference thereto, and justify the tenant in vacating the premises. In other words, the rule invoked by appellant does not apply to the lessor of a part of a building, since the tenant does not have control of the building. See, also, *Building Ass'n of Duluth Odd Fellows v. Van Nispen,* 220 Minn. 504, 20 N. W. (2d) 90, to the effect that the existence of a nuisance and the occurrence of constructive eviction are questions of fact.

In the case at bar, a nuisance existed and constructive eviction occurred. See annotations in 20 A. L. R. 1394 *et seq.,* and annotations in 64 A. L. R. 909 *et seq.,* in support of the rule that the presence of rats in great numbers in a building rented by several tenants, control of a portion of which is retained by the landlord, may constitute such a nuisance as to justify a tenant in abandoning the premises on the theory of constructive eviction.

■ The defense of contributory negligence on the part of respondent is without substantial merit. The control of the building was in the landlord and not in the tenant. Storage, movement, record keeping, and discharge of the goods stored by respondent were done under the supervision of appellant. Respondent never had notice or knowledge of the rat-infestation — whenever it may have commenced—until July, 1944, at which time appellant unsuccessfully undertook those measures to remove the rats, which measures appellant suggests respondent should have pursued. The duty, under the facts in the case at bar, was imposed upon appellant landlord to keep the premises tenantable, and those cases where entire houses were leased or where no opportunity to remedy the condition was afforded are not applicable to the facts in the case at bar.

The judgment is affirmed.

MALLERY, C. J., STEINERT, SIMPSON, and ABEL, JJ., concur.