[No. 44287.   En Banc.   June 2, 1977.]

JAMES J. CHERBERG, ET AL, *Petitioners,* v. PEOPLES NATIONAL BANK OF WASHINGTON, *Defendant,* JOSHUA GREEN CORPORATION, *Respondent.*

596

*Olwell, Boyle & Hattrup,* by *Lee Olwell,* for petitioners.

*Macbride, Sax & MacIver,* by *D. Gordon Willhite,* for respondent.

UTTER, J.—James Cherberg and his wife brought a claim based in part upon the tort of intentional interference with business expectancies arising from the willful refusal of the Joshua Green Corporation, as their landlord, to perform duties owed them under a commercial lease. A jury verdict for $42,000 was entered in favor of the Cherbergs. The Court of Appeals in *Cherberg v. Peoples Nat'l Bank,* 15 Wn. App. 336, 549 P.2d 46 (1976), determined that, while on the facts presented an implied duty to repair certain exterior walls did exist, the trial court erred in declining to grant the landlord's motion for a directed verdict. It held that an action for intentional interference did not lie because one cannot, as a matter of law, be guilty of an intentional tort for interfering with one's own contract. We reverse that decision.

In 1967 the petitioners, James and Arlene Cherberg, leased a portion of the Lewis Building on Fifth Avenue in downtown Seattle and invested some $80,000 in the establishment and operation of a restaurant business at that location. The respondent, Joshua Green Corporation, acquired the Lewis Building in February of 1972, subject to the lease of the petitioners. In April of 1972, Peoples National Bank of Washington, the owner of the property abutting the Lewis Building on the south, commenced demolition of the existing buildings on its property for the purpose of constructing a high–rise office tower. The demolition work resulted in the exposure of the south wall of the Lewis Building. It was found to be structurally unsafe and in need of substantial repairs to satisfy requirements of the

City of Seattle Building Department. The demised premises here at issue were located within the Lewis Building but did not abut the south wall.

The lease between the parties required the lessee to make necessary repairs to maintain the demised premises, excepting the outside walls and other structural components of the building, and reserved to the lessor the use of the roof and outside walls of the building. The lease does not contain an express covenant concerning the responsibility to maintain the structural components of the building.[1]

Upon learning of the problems with the south wall, the lessor contacted the Cherbergs directly and through its attorneys, indicating the Green Corporation would probably elect not to repair the wall and that the City might order the building closed. The Cherbergs responded that the lessor was obligated under the lease to make repairs and that they would suffer substantial damage should their tenancy be disrupted.

Thereafter, the lessor terminated the lease and informed the Cherbergs of its intention to post the building as

---

[1]Pertinent lease covenants contained the following language:

"(5) Unless otherwise provided in this lease, Lessee, having ascertained the physical condition of said premises from a careful and complete inspection thereof, accepts said premises in present condition, and at Lessee's sole expense, shall promptly make all repairs and do all acts and things necessary or incidental thereto; provided, however, that Lessee's said obligation shall not extend to the foundations, structural bearing parts, roof and outside walls of the premises unless repairs thereto or work thereon be necessitated by Lessee's act or negligence.

"(16) Lessee shall allow Lessor and Agent free access to said premises at all reasonable times for purpose of inspecting of the same or of making repairs, additions or alterations to said premises or to the building in which said premises are located but this right shall not constitute or be construed as an agreement on the part of Lessor to make any repairs, which Lessee is required to make, or to make any additions or alterations to said premises.

"(17) Unless otherwise provided in a rider to this lease, the use of the outside area of the walls and the roof of said premises or the building in which said premises are located, is reserved unto Lessor who shall have the right to utilize the same for any purposes desired including sign purposes; . . ."

unsafe. The Cherbergs closed their business for approximately 1 week. An independent consultant then informed the Cherbergs that repair of the wall was in fact feasible. Petitioners reopened their business when the Green Corporation failed to actually post the building and at that time reiterated their demands to the lessor. The bank, not wishing to be delayed further in its construction plans, eventually repaired the wall at its own expense (estimated at $30,000 to $50,000).

This action was brought against the bank and the Green Corporation, alleging breach of the lessor's duty to repair, negligent demolition by the bank, and, that the defendants had engaged in a conspiracy to destroy petitioners' business. Undisputed evidence was presented demonstrating that there were close ties between Joshua Green III, the Green Corporation, and Peoples National Bank of Washington. The evidence disclosed the Green Corporation viewed the Lewis Building as an adequately profitable investment under the circumstances existing at the time of purchase, but that it was the Corporation's desire to regain control of the premises as soon as possible in order to demolish the existing structure on the property and erect a new building which they felt might be more profitable. Demolition of the Lewis Building during the course of the new construction would have been of substantial economic benefit both to the Green Corporation and to the bank. In early 1972 both the bank and the Green Corporation had requested the same agent to engage in efforts to negotiate a sale of petitioners' leasehold, in order that the Green Corporation might regain control of the premises.

The trial court, at the conclusion of testimony, dismissed the bank from the suit and also dismissed the negligence and conspiracy claims. Respondent's other motions pertinent to this appeal were denied. The jury was instructed that respondent was liable for damages caused by the failure to repair the outside wall. It further instructed the jury with regard to the elements of the tort of intentional interference with business expectations and that, if the jury

concluded the defendant's actions were willful, damages for mental suffering, inconvenience, and discomfort would be compensable. The jury made a special finding of willful action and returned a verdict of $42,000. The only evidence of economic loss due to the temporary closure and attendant disruption of business was in the amount of $3,100.

The Court of Appeals held the lessor did have a duty to make repairs to the wall on the basis of a mandate so to do from competent government authority. However, it reversed and remanded, holding that the Green Corporation was entitled to a directed verdict on the claim of interference with business expectations and the assessment of damages for inconvenience, discomfort and mental distress.

■ The first issue is the rights and duties of the parties with regard to the unsafe condition of the south wall of the building. We agree with the holding of the Court of Appeals that an implied duty on the part of the lessor exists to make those repairs mandated by competent government authority where, as here, the appropriate authority determines that, in the interest of the public welfare, a defective condition of a building must be remedied. We also agree the evidence presented established that the refusal of the respondent to take action to fulfill this duty, within a reasonable time after notification from the City, breached an implied covenant of quiet enjoyment and resulted in an actionable constructive eviction. *See Cherberg v. Peoples Nat'l Bank, supra* at 343–45.

In addition, however, even absent a mandate from government authority, the lessor was under a duty to make the repairs here in question. The general rule is that a landlord has no duty to make repairs to the *demised premises* absent an express covenant requiring such action. *Feigenbaum v. Brink,* 66 Wn.2d 125, 401 P.2d 642 (1965); *Conradi v. Arnold,* 34 Wn.2d 730, 209 P.2d 491 (1949); *Cordes v. Guy Inv. Co.,* 146 Wash. 143, 262 P. 131 (1927). While it is true this lease did not contain an express covenant abrogating this common–law rule, the area requiring

repair was not a part of the demised premises but was an area of the building over which the landlord had expressly retained control.

A landlord has a duty to maintain, control and preserve retained portions of the premises subject to a leasehold in a manner rendering the demised premises adequate for the tenant's use and safe for occupancy by both the tenant and his invitees. *Geise v. Lee,* 84 Wn.2d 866, 529 P.2d 1054 (1975); *Feigenbaum v. Brink, supra; Washington Chocolate Co. v. Kent,* 28 Wn.2d 448, 183 P.2d 514 (1947); *Andrews v. McCutcheon,* 17 Wn.2d 340, 135 P.2d 459 (1943); *Le Vette v. Hardman Estate,* 77 Wash. 320, 137 P. 454 (1914). Failure to fulfill this duty results in liability on the part of the lessor for injury caused thereby, *Geise v. Lee, supra,* and failure to fulfill this duty, by omission to repair, can in a proper case constitute an actionable constructive eviction. *Washington Chocolate Co. v. Kent, supra. See generally* Stoebuck, *The Law Between Landlord and Tenant in Washington,* 49 Wash. L. Rev. 291, 347–50 (1974).

The willful refusal to adequately maintain retained portions of a building so as to allow the tenant to enjoy the beneficial use of the demised portion of the building is a breach of an implied duty owed by the landlord to the tenant under Washington law. On these facts this breach of duty was sufficient to constitute an actionable constructive eviction, and provides a basis for the conclusion that the landlord was liable for any damages stemming from that breach, *Washington Chocolate Co. v. Kent, supra,* independent of any directive to repair issued by the City of Seattle.

The remaining question is whether a willful refusal on the part of a landlord to make repairs when under a duty so to do gives rise to an action in tort for intentional interference with the tenant's business expectancies with third parties. The Court of Appeals held the trial court erred in declining to grant the lessor's motion for a directed verdict on the issue of intentional interference with the lessees'

business. The basis of this ruling was that the lessee should not be able to recover in tort for breach of a duty arising by virtue of a lease. The Court of Appeals also held that it was error to inform the jury it could award additional damages for inconvenience, discomfort and mental anguish if it found the lessor's actions were willful, because to do so would be to allow punitive or exemplary damages for breach of a lease.

■ As a general rule a tenant may not recover such additional damages solely on the basis of breach of such a duty. *Barnes v. Bickle,* 111 Wash. 133, 189 P. 998 (1920); *see* Stoebuck, *supra* at 350 n.271. On the other hand, damages for mental anguish are available upon proof of an intentional tort. *See Hunsley v. Giard,* 87 Wn.2d 424, 431, 553 P.2d 1096 (1976); *Browning v. Slenderella Sys.,* 54 Wn.2d 440, 341 P.2d 859 (1959). Damages based upon discomfort and inconvenience are also available in such a situation. *Carmody v. Trianon Co.,* 7 Wn.2d 226, 109 P.2d 560 (1941).

■ The question of whether a breach of a lease may under some circumstances also constitute a basis of liability in tort for intentional interference with business expectancies has apparently not been considered by this court. The elements of the tort of interference with business relationships are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination thereof; (4) resultant damage. *Calbom v. Knudtzon,* 65 Wn.2d 157, 396 P.2d 148 (1964). The existence of a valid enforceable contract is not necessary to the maintenance of the action and the possibility of a remedy in contract does not preclude it. *F.D. Hill & Co. v. Wallerich,* 67 Wn.2d 409, 407 P.2d 956 (1965).

Petitioners argue evidence was presented on each of these elements sufficient to present a jury question as to liability for the tort at issue and that recovery in tort should not be denied simply because the tortious conduct

may also be viewed as a breach of an implied duty under the lease. In an early case we concluded that a landlord may be held liable for the tort of interfering with his lessee's business. *Seidell v. Taylor,* 86 Wash. 645, 151 P. 41 (1915). There the plaintiff maintained a bakery on premises leased from the defendant. The lessor entered the premises and instigated a "public brawl" which did substantial damage to the lessee's business. The lessee was allowed recovery in tort for loss of goodwill. Though the acts of the lessor rather clearly also involved a breach of the covenant of quiet enjoyment, no mention is made in the court's opinion of the problem of allowing tort recovery for breach of a lease covenant.

Cases from other jurisdictions indicate that, in certain circumstances, a breach of contract or of a lease covenant may also give rise to liability in tort. *See, e.g., Acadia, California, Ltd. v. Herbert,* 54 Cal. 2d 328, 353 P.2d 294, 5 Cal. Rptr. 686 (1960)(Willful failure to supply water under a contract is both breach of contract and an intentional tort. Under the latter theory punitive damages are recoverable.); *Urban v. Hartford Gas Co.,* 139 Conn. 301, 93 A.2d 292 (1952)(Unreasonable infliction of emotional distress arising from wrongful repossession compensable in tort.); *Jones v. Kelly,* 208 Cal. 251, 280 P. 942 (1929)(Act of lessor in willfully cutting off water supply to lessee constitutes constructive eviction and also states good cause of action in tort.). It appears to be the general view that, in those instances in which the conduct of the breaching party indicates a motive to destroy some interest of the adverse party, a tort action may lie and items of damage not available in contract actions will be allowed.

> If the defendant acted merely as a contracting party (at legal liberty perhaps to breach its agreement upon payment of damage), that is one thing. But if the defendant went further, and acted with intent to inflict injury beyond that contemplated as a result of the mere breach of contract, I would hold that the contract does not grant the defaulter immunity from tort liability.

*Schisgall v. Fairchild Publications, Inc.*, 207 Misc. 224, 232, 137 N.Y.S.2d 312 (1955). *See Peitzman v. Illmo*, 141 F.2d 956 (8th Cir. 1944); *Taylor v. Atchison, T. & S.F. Ry.*, 92 F. Supp. 968 (W.D. Mo. 1950); *Wampler v. Palmerton*, 250 Ore. 65, 439 P.2d 601 (1968).

A separate line of cases, supportive of the Court of Appeals decision herein, holds that, though a breach of duty under a contract or lease necessarily interferes with the injured party's business relations with third parties, the injured party is limited to an action for breach of contract and may not recover in tort for business interference. *Hein v. Chrysler Corp.*, 45 Wn.2d 586, 277 P.2d 708 (1954); *Glazer v. Chandler*, 414 Pa. 304, 200 A.2d 416 (1964). *See N.A. Berwin & Co. v. American Safety Razor Corp.*, 108 N.Y.S.2d 677 (Sup. Ct. 1951); *Sax v. Sommers*, 108 N.Y.S.2d 467 (Sup. Ct. 1951). In *Glazer*, at page 308, the rule applicable to this group of cases is set forth as follows:

> [W]here, as in this case, the allegations and evidence only disclose that defendant breached his contracts with plaintiff and that as an incidental consequence thereof plaintiff's business relationships with third parties have been affected, an action lies only in contract for defendant's breaches, and the consequential damages recoverable, if any, may be adjudicated only in that action.

The distinguishing feature between the two lines of cases would seem to be whether the interference with business relations was a mere incidental consequence of the breach or a motive or purpose therefor. We have held that, in some instances, intentional interference with a business expectancy may be "privileged" and therefore not a basis for tort recovery. *Calbom v. Knudtzon, supra; Scymanski v. Dufault*, 80 Wn.2d 77, 491 P.2d 1050 (1971). A privilege to interfere may be established if the interferor's conduct is deemed justifiable, considering such factors as: the nature of the interferor's conduct; the character of the expectancy with which the conduct interferes; the relationship between the various parties; the interest sought to be advanced by the interferor; and the social desirability of protecting the

expectancy or the interferor's freedom of action. *Calbom v. Knudtzon, supra; Scymanski v. Dufault, supra. See also* Restatement of Torts § 767 (1939).

Where the evidence supports the submission to the jury, as it does in this case, of an intentional breach of a lease covenant resulting from actions or motives not privileged on the basis of consideration of the factors above set forth, this can provide a basis for tort liability where it results in an interference with a valid business expectancy of another party to the lease agreement. Tort liability therefore can properly be imposed, as it is here, when the evidence adequately establishes the underlying motive for the intentional breach by the lessor was not the economic viability of the lessor's investment, in its present state, but rather was economic considerations outside the scope of the parties' obligations under their existing agreement.

A party to a lease or contract should not be held liable in tort for a willful breach of an agreement which it is no longer economically feasible for the party to respect. As stated in the *Schisgall* case, a party is in such an instance at "legal liberty" to breach the agreement upon payment of ordinary contract damages demonstrated to have resulted from the breach. But here, the record fails to indicate that the Lewis Building would not provide the lessor with a satisfactory return if the wall had been repaired by the lessor and the lessees' rights under the lease respected. There is, instead, evidence in the record from which the jury could have inferred the lessor used the condition of the wall as a means to oust the petitioners and gain possession of the leased premises in order that the lessor might put those premises to a different and perhaps considerably more profitable use. Proof of a breach based upon such a motive demonstrates a failure to make a good faith effort to meet obligations under the lease and may give rise to liability in tort.

In evaluating the evidence we must assess it in view of the lessor's challenge to the denial of a motion for directed verdict on the issue of intentional interference. *See*

*Cherberg v. Peoples Nat'l Bank,* 15 Wn. App. 336, 347 n.2, 549 P.2d 46 (1976). In considering such a motion for directed verdict the court must view the evidence in the light most favorable to the nonmoving party and the motion should be granted, or the denial thereof reversed, only if it can be determined no evidence or reasonable inferences therefrom exist which would be sufficiently substantial to sustain a verdict for the nonmoving party. *Shelby v. Keck,* 85 Wn.2d 911, 541 P.2d 365 (1975); *Hemmen v. Clark's Restaurant Enterprises,* 72 Wn.2d 690, 434 P.2d 729 (1967); *Browning v. Ward,* 70 Wn.2d 45, 422 P.2d 12 (1966).

An examination of the testimony presented at trial when considered in a light most favorable to petitioners, indicates a number of facts from which an inference of a bad faith motive for breach might be drawn. The respondent's efforts to purchase petitioners' leasehold interest were halted almost immediately upon discovery of the structural defect in the wall. Some of respondent's conduct during negotiations could be argued to be an effort to intimidate the petitioners in such a way as to force abandonment of their position. The respondent's assertion that it would be posting the building as unsafe, followed by the failure to do so once the petitioners closed their business, coupled with the evidence that repair of the wall was feasible and was in fact accomplished at considerably lower cost than the lessor's original estimates, is also damaging to the lessor. The lessees could also argue that the respondent showed an unusual lack of concern for the effect of demolition and construction adjacent to and underneath the Lewis Building upon the petitioners' business, and failed to use its best efforts to minimize the disruption to the lessees' business.

Our examination of the record indicates that evidence was presented to the jury sufficient to provide a basis for liability for the tort of intentional interference with business expectancies. The motion for a directed verdict on that issue was therefore properly denied. The record also contains testimony from several witnesses about the effect

of respondent's conduct on the petitioners and the mental distress, inconvenience, and discomfort suffered by the petitioners as a result of that conduct. The damages awarded are not so disproportionate to the injuries proven as to be indicative of passion or prejudice and we will therefore not disturb the jury verdict. *Rasor v. Retail Credit Co.*, 87 Wn.2d 516, 554 P.2d 1041 (1976); *Workman v. Marshall*, 68 Wn.2d 578, 414 P.2d 625 (1966).

The decision of the Court of Appeals is reversed and the judgment in favor of the petitioners reinstated. It is so ordered.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.