**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| FITNESS INTERNATIONAL, LLC, a California limited liability company, | No. 84242-1-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| NATIONAL RETAIL PROPERTIES, LP, a Delaware limited liability company, | |
| Respondent. | |

MANN, J. — On March 16, 2020, Governor Jay Inslee issued the first of several public health orders directing all nonessential businesses, including gyms and fitness centers, to immediately cease operating to prevent the spread of the 2019 novel coronavirus (COVID-19). While the initial closure was lifted in August 2020, a second closure occurred between November 2020 and January 2021. Fitness International, LLC, operates an "LA Fitness" health and fitness club in Spanaway at a facility it leases from National Retail Properties, LP (National Retail). As a result of the closures, Fitness International sued National Retail for breach of lease and sought declaratory judgment based on the equitable doctrines of frustration of purpose and impossibility or

No. 84242-1-I/2

impracticability. Fitness International appeals the trial court's order granting summary judgment and dismissing its claims. We affirm.

I.

As of March 2020, Fitness International owned and operated over 700 large health clubs in 27 states and the District of Columbia, including 28 in Washington. Most of the health clubs operated under the trade name "LA Fitness." Fitness International has approximately five million active members. National Retail is a real estate investment trust that owns commercial properties nationwide.

In July 2015, Fitness International brought in National Retail as a development partner, and they entered into a series of agreements relating to the acquisition, development, and leasing of a vacant 3.77 acre parcel in Spanaway, Washington (premises). Together the contracts formed a "reverse build-to-suit" transaction. [1] Relevant here, under the development agreement, Fitness International agreed to develop the premises for a health and fitness facility that Fitness International would then lease from National Retail. Under a separate lease agreement, Fitness International agreed to lease the premises from National Retail for an initial term of 19 years with 4 options to extend the term of the lease up to 40 years.

The lease describes the uses allowed on the premises. "Initial uses" are for the "operation of a health club and fitness facility" which includes, "without limitation," a long list of activities such as personal training, lessons, group classes, weight and aerobic training, youth instruction, and saunas. The lease also allows a long, nonexclusive list

---

[1] The premises was initially owned by a third-party developer, Spanaway Village, L.P. Fitness International purchased the property from the developer, and then, under the "assignment and assumption of contract" agreement assigned all of its rights and obligations to the purchase to National Retail.

No. 84242-1-I/3

of "ancillary uses" that Fitness International can use the premises for, including uses such as tanning services, cosmetic treatments, child care facilities, food and beverage services, spa services, dry cleaning drop-off and pickup, car washing/detailing, shoe repair, and nutritional supplement sales. The lease leaves it to Fitness International's business judgment to decide ancillary uses for the premises:

> for such other use as Tenant may determine in Tenant's reasonable business judgment, provided that such use: (i) is lawful; (ii) is in compliance with applicable environmental, zoning and land use laws and requirements; (iii) does not violate matters of record or restrictions affecting the Premises; (iv) does not conflict with any other agreement to which Landlord is bound, of which agreement Tenant has received written notice, where such conflict would materially adversely affect Landlord; (v) would not have a material adverse effect on the value of the Premises; and (vi) would not result in or give rise to any material environmental deterioration or degradation of the Premises.

The development agreement allocated some risk and excused some performance for "Force Majeure Events." The force majeure clause stated:

> If either party is delayed or hindered in or prevented from the performance of any act required hereunder because of strikes, lockouts, inability to procure labor or materials, retraction by any governmental authority of the building permit, failure of power, restrictive laws, riots, insurrection, war, fire, inclement weather or other casualty or other reason of a similar or dissimilar nature beyond the reasonable control of the party delayed, financial inability excepted (each, a "Force Majeure Event"), the performance of such act shall be excused for the period of delay caused by Force Majeure Events.

The lease does not contain a similar force majeure clause.

On March 16, 2020, Governor Inslee issued the first of several public health orders directing all nonessential businesses, including gyms and fitness centers, to immediately cease operating to prevent the spread of the COVID-19 virus. On August 10, 2020, the state permitted indoor clubs and gyms in Pierce County to operate under

-3-

restricted guidelines. Another COVID-19 closure period occurred from November 17, 2020 to January 10, 2021. During these closure periods it was illegal for Fitness International to use the premises to operate a health club and fitness facility. In January 2021, the public health orders abated and Fitness International resumed operations.

National Retail requested full rental payments under the lease during the closure periods. Fitness International paid its rent obligations from March 2020 through November 2020. On November 17, 2020, Fitness International sued National Retail in Pierce County Superior Court. It raised three causes of action for breach of lease: (1) breach of the representations, warranties, and covenants, (2) failure to provide credits under the lease, and (3) failure to abate rent. In its fourth cause of action, Fitness International sought a declaratory judgment that it was not obligated to pay rent during the closure periods based on equitable grounds of frustration of purpose, or impracticability and/or impossibility. National Retail answered and counterclaimed for breach of lease and unjust enrichment seeking rent owed for December 2020 and January 2021.

National Retail moved for summary judgment requesting (1) dismissal of Fitness International's first three causes of action for breach of lease, (2) summary declaratory judgment against Fitness International as to its fourth cause of action, and (3) summary judgment for unpaid rent and prejudgment interest on National Retail's counterclaim.

After oral argument and supplemental briefing, the trial court granted summary judgment for National Retail. The court dismissed Fitness International's three causes of action for breach of lease. The court also dismissed Fitness International's fourth cause of action for declaratory judgment but declared that its duty to pay rent was not

No. 84242-1-I/5

excused due to the public health orders. The court granted judgment for National Retail for unpaid rents.

Fitness International appeals.

II.

This is an appeal from an order granting summary judgment. Our review is de novo and we engage in the same inquiry as the trial court. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Young, 112 Wn.2d at 225. We construe the evidence and reasonable inferences in the light most favorable to the nonmoving party. Strauss v. Premera Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 640 (2019).

A.

Fitness International argues that the trial court erred in dismissing its claims that National Retail breached the covenant of quiet enjoyment, and the duty to credit or abate rent paid during the pandemic. We disagree.

"The interpretation of a lease is a question of law that this court reviews de novo." Bellevue Square, LLC v. Whole Foods Mkt. Pac. Nw., Inc., 6 Wn. App. 2d 709, 716-17, 432 P.3d 426 (2018). Our primary goal is to determine the parties' intent. Berg v. Hudesman, 115 Wn.2d 657, 663, 801 P.2d 222 (1990). We determine the parties' intent by "focusing on the objective manifestation of the parties in the written contract." Bellevue Square, LLC, 6 Wn. App. 2d at 716 (citing Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005)." "Accordingly, a court considers only what the parties wrote, giving words in a contract their ordinary, usual, and popular

-5-

No. 84242-1-I/6

meaning unless the agreement as a whole clearly demonstrates a contrary intent." 4105 1st Ave. S. Invs., LLC v Green Depot WA Pac. Coast, LLC, 179 Wn. App. 777, 784, 321 P.3d 254 (2014); Hearst, 154 Wn.2d at 503-04. "A contract 'should be construed as a whole and, if reasonably possible, in a way that effectuates all of its provisions.'" Bellevue Square, LLC, 6 Wn. App. 2d at 717 (quoting Colo. Structures, Inc. v. Ins. Co. of the W., 161 Wn.2d 577, 588, 167 P.3d 1125 (2007)).

1.

We first address Fitness International's claim that National Retail breached the lease's express covenant and warranty of quiet enjoyment. Fitness International's claim fails as a matter of law for two reason: (1) the government, not National Retail, affected Fitness International's possession and use of the premises; and (2) the lease excludes interference by government orders.

The covenant of quiet enjoyment protects "the tenant from any wrongful act by the lessor which . . . interferes with the tenant's quiet and peaceable use and enjoyment thereof." Cherberg v. Peoples Nat'l Bank of Wash., 15 Wn. App. 336, 343, 549 P.2d 46 (1976), rev'd on other grounds, 88 Wn.2d 595, 564 P.2d 1137 (1977); Hockersmith v. Sullivan, 71 Wash. 244, 247, 128 P. 222 (1912). The covenant is not breached when a third party, who is stranger to title, disturbs possession. 5 THOMPSON ON REAL PROPERTY § 41.03(c)(5)(3d Thomas ed. 2019); see also 15 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 48:10 (4th ed. 2014).

While perhaps old, the Supreme Court's decision in Hockersmith is instructive. There, the City of Seattle regraded a street and in doing so "render[ed] the [leased] premises inaccessible and of no value." Hockersmith, 71 Wash. at 245. The tenants

-6-

No. 84242-1-I/7

sued the landlord for breach of the covenant of quiet enjoyment.  Hockersmith, 71 Wash. at 245.  The trial court dismissed the claim and the Supreme Court affirmed, holding that the covenant "does not insure against third parties who are wrongdoers." Hockersmith, 71 Wash. at 247.  Because the landlord had nothing to do with the street work, the court held that if the City's regrading was wrongful, the tenant's remedy was against the City, not the landlord.  Hockersmith, 71 Wn. at 247.

The same is true here.  National Retail was not responsible for the public health orders and was powerless to prevent the government's closure of nonessential businesses like fitness clubs.  Fitness International's claim is more appropriate against the government rather than its landlord.

Furthermore, the lease explicitly excludes interferences caused by government orders.  Section 27.2 of the lease specifically states that the covenant and warranty of quiet enjoyment is expressly subject to other provisions of the lease:

> Landlord covenants and warrants that Tenant shall have and enjoy full, quiet, and peaceful possession of the Premises, its appurtenances and all rights and privileges incidental thereto during the term, subject to the provisions of this Lease.

One of the other provisions, section 9.2, requires Fitness International to comply with all use regulations and orders in effect during the tenancy:

> Tenant, at Tenant's sole expense, promptly shall comply with all applicable statutes, ordinances, rules, regulations, orders, covenants and restrictions of record, and requirements in effect during the term or any part of the term hereof, regulating the use by Tenant of the Premises.

Fitness International asks this court to ignore this interpretation because section 9.2 does not reference the covenant of quiet enjoyment.  But, we "view the contract as a whole, interpreting particular language in the context of other contract provisions."

-7-

No. 84242-1-I/8

<u>Viking Bank v. Firgrove Commons 3, LLC</u>, 183 Wn. App. 706, 713, 334 P.3d 116 (2014). Read together, section 27.2's "subject to the provisions of this Lease" language effectually incorporates section 9.2, limiting the scope of the covenant to exclude the effects of government regulations. Here, the government ordered the COVID-19 shutdown that infringed on Fitness International's enjoyment of its leased property. Fitness International agreed to abide by all government orders in section 9.2. Section 27.2 incorporates section 9.2. An agreed upon covenant cannot now constitute a breach of quiet enjoyment.

Fitness International argues that this interpretation contradicts Washington law because the court is required to "harmonize clauses" in the lease; interpreting section 9.2 as an exemption to National Retail's covenant conflicts with the broad, unqualified and sweeping covenant of section 27.2. But Fitness International reads out "subject to the provisions of this Lease." Interpreting section 9.2 as an express covenant to abide by orders and agree it is not a breach of quiet enjoyment is a more harmonious interpretation than stating that Fitness International's compliance with section 9.2 creates a breach by National Retail.

Alternatively, Fitness International argues that the inclusion of both the terms covenant and warranty in section 27.2 refer to different promises. We disagree.

First, any distinction is immaterial because both terms are subject to other provisions of the lease:

> Landlord <u>covenants and warrants</u> that Tenant shall have and enjoy full, quiet, and peaceful possession of the Premises, its appurtenances and all rights and privileges incidental thereto during the term, <u>subject to the provisions of this Lease</u>.

No. 84242-1-I/9

(Emphasis added). Thus, even if the terms meant different things, they are both still subject to other provisions of the lease, including section 9.2.

Further, the context of conveyances, "[the] covenant of warranty and covenant of quiet enjoyment are identical." Rowe v. Klein, 2 Wn. App. 2d 326, 335, 409 P.3d 1152 (2018) (citing W. Coast Mfg. & Inv. Co. v. W. Coast Imp. Co., 25 Wash. 627, 643, 66 P. 97 (1901)). The assurance has taken the form of a covenant and warranty based on the nature of the persons against whom it applies:

> The implied covenant of quiet enjoyment concerns the tenant's possession of the leased premises. It is a covenant and warranty that the landlord, and individuals claiming under or through the landlord, will not wrongfully disturb the possession of the tenant, and that the tenant's possession will not be disturbed by individuals with paramount title to the property.

5 THOMPSON, supra, § 41.03(c)(1). The "covenant" is a promise that the lessor will not disturb the tenant's possession while the "warranty" is a promise that no one with paramount title will disturb possession:

> Pursuant to the implied covenant of quiet enjoyment, the landlord warrants that the tenant will not be disturbed in the possession by another other person with superior legal right to possession and protects the tenant from actual or constructive eviction by someone with superior title. Moreover, the landlord covenants not to evict the tenant himself, actually or constructively.

49 AM. JUR. 2D Landlord and Tenant § 469 (2018) (footnotes omitted). In other words, the warranty protects the tenant from eviction by someone else with a superior title to the property while the covenant protects the tenant from eviction by the lessor. Neither protect against actions by third-party strangers, such as government regulation.

National Retail did not breach the covenant of quiet enjoyment because it was not responsible for and powerless to stop the intervening event.

-9-

No. 84242-1-I/10

2.

We next address Fitness International's claim that National Retail breached contractual duties to credit or abate rent. "A breach of contract is actionable only if the contract imposes a duty." NW. Indep. Forest Mfrs. V. Dep't of Lab. & Indus., 78 Wn. App. 707, 712, 899 P.2d 6 (1995). The lease does not impose a duty for National Retail to credit or abate rent.

To the contrary, the only discussion of a credit or abatement is in section 15 of the lease. Section 15 states: "Tenant is not entitled to any rent abatement during or resulting from any disturbance on or partial or total destruction of the Premises." Moreover, section 5.2 requires Fitness International to pay rent "without prior notice, invoice, demand, deduction, or offset whatsoever." Section 29.11 requires payment even in breach:

> This Lease shall be construed as though the covenants herein between Landlord and Tenant are independent and not dependent and Tenant . . . agrees that if Landlord fails to perform its obligations set forth herein, Tenant shall not be entitled to make any repairs or perform any acts hereunder at Landlord's expense or to any offset of the rent or other amounts owing hereunder against Landlord.

Looking at the terms of the lease, there is no requirement for National Retail to abate or credit rent without a separate action and finding that National Retail breached the lease agreement. The lease requires Fitness International to pay rent and does not include a provision that entitles Fitness International to rent abatement or credit.

III.

Fitness International argues in the alternative that the trial court erred in granting summary judgment because it was entitled to declaratory judgment that it did not have

-10-

No. 84242-1-I/11

to pay rent during the closure periods based on equitable grounds of frustration of purpose, or impracticability and/or or impossibility. We disagree.

At the outset, Fitness International argues that our review of the trial court's dismissing its claim for declaratory judgment is subject to an abuse of discretion standard of review. In contrast, National Retail argues our review is de novo. Our Supreme Court recently resolved this conflict in Borton & Sons, Inc. v. Burbank Props, LLC, 196 Wn.2d 199, 205-07, 471 P.3d 871 (2020). The threshold question of "whether equitable relief is appropriate is a question of law that we review de novo." Borton & Sons, 196 Wn.2d at 207. If equitable relief is available, whether the trial court properly fashioned the remedy is reviewed for abuse of discretion. Borton & Sons, 196 Wn.2d at 206. Because the trial court concluded that equitable relief was unavailable, our review here is de novo.[2]

A.

The doctrine of "discharge by supervening frustration" is recited in Restatement (Second) of Contracts § 265 (Am. L. Inst. 1981):

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary."

---

[2] National Retail argues that equitable remedies are unavailable as a matter of law because Fitness International has an adequate remedy at law—its challenge that National Retail breached the lease. National Retail cites Kucera v. State Dep't of Transp., 140 Wn.2d 200, 210, 995 P.2d 63 (2000) for the three-part test to determine whether there are adequate remedies at law: "(1) the injury complained of by its nature cannot be compensated by money damages, (2) the damages cannot be ascertained with any degree of certainty, and (3) the remedy at law would not be efficient because the injury is of a continuing nature." Fitness International responds that money damages were insufficient because it sought a declaration that rent was not owed during the closure periods (as well as potentially future closure periods). We agree with Fitness International.

No. 84242-1-I/12

Washington State Hop Producers, Inc., Liquidation Tr. V. Goschie Farms, Inc., 112 Wn.2d 694, 700, 773 P.2d 70 (1989).  Under the Restatement, "the purpose that is frustrated must have been a principal purpose of that party in making the contract . . . without [which] the transaction would make little sense."  RESTATEMENT (SECOND) OF CONTRACTS § 265, cmt. a.  See also Wash. State Hop Producers, 112 Wn.2d at 700.  Performance is not excused unless the purpose is "substantially frustrated."  Felt v. McCarthy, 130 Wn.2d 203, 207, 922 P.2d 90 (1996).  "It is not enough that the transaction has become less profitable for the affected party or even that [it] will sustain a loss."  Felt, 130 Wn.2d at 208.

While we agree that Fitness International could not fully operate a traditional fitness facility during the limited months of the public health orders, the purpose of the lease was not substantially frustrated.  Section 9.1 of the lease describes the initial and ancillary authorized uses of the premises.  Initial uses include a lengthy list of traditional health and fitness facility uses:

> Tenant may use the Premises ("Initial Use") for the operation of a health club and fitness facility which may include, without limitation, weight and aerobic training, group exercise classes, exercise dancing such as Zumba, yoga, Pilates, racquetball/squash, personal training, aerobics, health and fitness related programs, free weights, spinning/cycling, circuit training, boxing, basketball, swimming pool, instruction in sports or other physical activities (e.g., swim lessons, racquetball/squash/tennis lessons, martial arts, dance, and youth sports instruction) and sauna and whirlpool facilities.

Section 9.1 also lists more than a dozen possible ancillary uses that Fitness International can conduct, including selling apparel, wellbeing services, vitamins, and food and beverages.  Use of the premises for ancillary purposes is left broadly to Fitness International's business judgment:

-12-

No. 84242-1-I/13

> Tenant may determine in Tenant's reasonable business judgment, provided that such use: (i) is lawful; (ii) is in compliance with applicable environmental, zoning, and land use laws ad requirements; (iii) does not violate matters of record or restrictions affecting the Premises; (iv) does not conflict with any other agreement to which Landlord is bound, of which agreement Tenant has received written notice, where such conflict would materially adversely affect Landlord; (v) would not have a material adverse effect on the value of the Premises; and (vi) would not result in or give rise to any material environmental deterioration or degradation of the Premises.

In Felt, a contract case, the purchaser stopped making payments on a real property purchase because zoning changes reduced the property's value by more than 80 percent. 130 Wn.2d at 205, 207. The Supreme Court held that a "decline in market value is not sufficient in and of itself" to excuse performance. Felt, 130 Wn.2d at 210; see also RESTATEMENT (SECOND) CONTRACTS §265 cmt. a (operating at a substantial loss does not constitute a substantial frustration excusing performance).

In leasing, the frustration defense is unavailable if a lease allows the tenant to put the premises to another use. Hayton v. Seattle Brewing & Malting Co., 66 Wn. 248, 248-49, 119 P. 739 (1911). In Hayton, the tenants entered into a lease stating they "may . . . conduct a retail saloon business in the building." Hayton, 66 Wash. at 249 (emphasis added). When prohibition laws went into effect, the tenant vacated, stopped paying rent, and argued that their performance was excused because the prohibition laws frustrated the purpose of their lease. Hayton, 66 Wash. at 249. The Supreme Court disagreed, holding that the saloon use "is only permissive in that respect, and clearly does not prevent [tenant] from using the premises for any lawful purpose." Hayton, 66 Wash. at 249. Simply, while their primary purpose was to conduct a saloon

-13-

business, because the negotiated lease agreement allowed for additional uses, the purpose of the lease was not frustrated.

As in Hayton, Fitness International's lease uses the same permissive term, the "Tenant may use the Premises." Moreover, the lease specifically enumerates more than a dozen other ancillary uses subject only to Fitness International's business judgment. Fitness International could for example, use the premise to create online classes, sell take-away food, beverages, and goods.

Fitness International relies on Weyerhaeuser v. Stoneway Concrete, Inc., 96 Wn.2d 558, 637 P.2d 647 (1981), and Brunswick-Balke-Collender Co. v. Seattle Brewing & Malting Co., 98 Wash. 12, 14-15, 167 P. 58 (1917). In Weyerhaeuser, a commercial mineral lease was frustrated when an unanticipated and unprecedented shift in environmental laws prevented the tenant from obtaining regulatory approvals. In applying the Restatement, the Supreme Court explained:

> There can be no doubt of the desired object or purpose of [the lease].
> . . . .
> [The] purpose of obtaining sand, gravel and other aggregates by strip mining the leased premises was frustrated by its inability to obtain the necessary permits is unchallenged. Stoneway was without fault in the occurrence of the supervening event causing the frustration of its purpose.

Weyerhaeuser, 96 Wn.2d at 561-62. After finding equitable relief appropriate, the court limited the scope of the equitable remedy. The court found that frustration did not excuse the tenant's rent obligations for the period between 1972 and 1975 when the tenant knew its project was a lost cause but remained in possession of the premises. Weyerhaeuser, 96 Wn.2d at 561-62.

-14-

No. 84242-1-I/15

Weyerhaeuser, is distinguishable. First, Fitness International remained in possession of the premises during the closure periods. In Weyerhaeuser, the court specifically excluded the periods the tenant remained in possession of the premises from the frustration doctrine. Weyerhaeuser, 96 Wn.2d at 561-62. There the court excluded a three-year period; we are considering a period of seven months. Second, a mineral land lease is a specific purpose—the mining of resources. There was no other available use for the land that met the limited purpose and project scope. Alternatively, here, Fitness International could alter its business practices to occupy the premises for other purposes.

In Brunswick, another Prohibition era case, the lease was materially narrower than the lease in Hayton. The Brunswick lease stated that "[t]he premises are hereby leased to the lessee for the purpose of conducting a saloon and selling liquors at retail therein." Brunswick, 98 Wn. at 14-15. Unlike the Hayton lease, the Brunswick lease left out the term "may." The Supreme Court concluded that the nonpermissive lease language made it apparent that the parties had "one and one purpose only in mind, that the premises were let for saloon purposes and were to be occupied as a saloon." Brunswick, 98 Wn. at 14-15. Because of Prohibition, the purpose was completely frustrated.

In contrast, the lease in this case is much more expansive and allows Fitness International flexibility in its use of the premises. Fitness International's lease was not substantially frustrated.

-15-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84242-1-I/16

B.

"The doctrine of impossibility and impracticability discharges a party from contractual obligations when a basic assumption of the contract is destroyed and such destruction makes performance impossible or impractical, provided the party seeking relief does not bear the risk of the unexpected occurrence." Tacoma Northpark, LLC v. NW, LLC, 123 Wn. App. 73, 81, 96 P.3d 454 (2004). These defenses are "not the legal equivalent of subjective inability to perform." Liner v. Armstrong Homes of Bremerton, Inc., 19 Wn. App. 921, 926, 579 P.2d 367 (1978).

Fitness International relies on Smugglers Cove, LLC v. Aspen Power Catamarans, LLC, 2020 WL 758107, at *3 (W.D. Wash. Feb. 14, 2020) (court order). There, the doctrine of impossibility discharged the contractual obligation to deliver a boat because a drunk driver struck and destroyed the boat in delivery. Smugglers Cove, 2020 WL 758107, at *3. The boat was destroyed, and so performance became impossible. Smugglers Cove, 2020 WL 758107, at *3.

In contrast, the lease provides Fitness International with exclusive possession and use of the premises in exchange for monthly rent and other charges. Fitness International still occupied the premises, could conduct ancillary uses including, but not limited to, conducting online classes, sell take-away food, or otherwise alter its business, and continue operations. The premises was not destroyed nor was Fitness International's exclusive possession and use disturbed. The temporary public health closure orders limited Fitness International's use of the premises, but that is not sufficient to discharge Fitness International of performance based on impossibility. "The

-16-

No. 84242-1-I/17

mere fact that a contract's performance becomes more difficult or expensive than originally anticipated, does not justify setting it aside." Liner, 19 Wn. App. at 926.

IV.

National Retail argues that it is entitled to an award of reasonable attorney fees and costs on appeal. We agree.

"A contractual provision supporting award of attorney fees at trial supports an award of attorney fees on appeal." Draper Mach. Works, Inc. v. Hagberg, 34 Wn. App. 483, 490, 663 P.2d 141 (1983). The lease contains such a provision:

> if any action for breach of or to enforce the provisions of this Lease is commenced, the court in such action shall award to the party in whose favor a judgment is entered, a reasonable sum as attorneys' fees and costs. Such attorneys' fees and costs shall be paid by the losing party in such action.

The trial court awarded National Retail reasonable attorney fees and costs at trial. Subject to compliance with RAP 18.1, we award National Retail its reasonable attorney fees incurred in this appeal.

Affirmed.

_____ Mann, J.

WE CONCUR:

_____ Coburn, J.

_____