[No. 34045-0-I.    Division One.    June 26, 1995.]

DONA L. FELT, ET AL, *Respondents*, v. THOMAS C. McCARTHY, ET AL., *Appellants*.

---

[17]*Wynn*, 176 Wash. at 288-89.

*Michael Davis*, for appellant.
*J. Robert Leach*, for respondent.

BECKER, J. — A buyer of real property asks to be excused from his remaining payments to the seller on the theory that the unanticipated passage of wetlands legislation frustrated his plan to develop the property. We affirm the trial court's order of summary judgment in favor of the seller. The doctrine of supervening frustration does not aid the buyer when the seller of real property has completely performed and the fulfillment of the buyer's development goals was not a basic assumption on which the seller entered into the contract.

The record, viewed in the light most favorable to the buyer, reflects the following: Dona and Charles Felt (hereafter Felt) owned about nine acres of real property in Snohomish County, zoned Rural Conservation. The County had designated the property as Business Park in its North Creek Comprehensive Plan, contemplating future development as offices and light manufacturing. Thomas McCarthy, an attorney practicing primarily real estate law, began assembling contiguous parcels of property for a business park. In January 1983, McCarthy obtained an option to purchase Felt's property as part of this project.

McCarthy applied for a rezone to the Business Park classification, covering about 123 acres including the Felt property. The hearing examiner denied the application without prejudice in November 1985 because it did not

show sufficiently unified control over the project. McCarthy nevertheless exercised the option to purchase Felt's property. The sale closed in December 1986. The purchase price was $310,000. McCarthy made a downpayment and gave Felt an unsecured promissory note for the balance. Felt conveyed the property to McCarthy by statutory warranty deed. McCarthy pledged the property to a lender.

McCarthy defaulted on the obligation to the lender in February 1988. The lender's assignee attempted to foreclose. McCarthy filed a petition for Chapter 11 bankruptcy, staying the scheduled foreclosure sale. In 1988 and again in 1989, McCarthy attempted to sell $47^1/2$ acres including the Felt property. Both attempts were unsuccessful. The buyer in the 1989 attempt agreed to pay $5,000,000 but withdrew from the purchase upon obtaining a report showing that a large majority of the property was wetlands.

McCarthy's reorganization plan in bankruptcy depended on rezoning or selling the Felt property. A creditor in the bankruptcy action established that wetlands legislation enacted by Snohomish County in 1987 rendered 90 percent of the property undevelopable. The bankruptcy court then dismissed McCarthy's petition. The Felt parcel was sold at foreclosure to the assignee of McCarthy's lender in January 1991.

McCarthy eventually stopped making payments on his note to Felt. Felt filed an action to collect on the unpaid amounts plus interest and attorney fees. McCarthy counterclaimed, asserting the doctrine of supervening frustration. The trial court entered judgment in favor of Felt. This appeal followed.

The Washington Supreme Court has adopted the doctrine of supervening frustration as set forth in section 265 of the Restatement (Second) of Contracts (1979):

"Discharge by Supervening Frustration" . . .

Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence

of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.[1]

The fair market value of the Felt property, after the loss of development potential, was $50,000—a substantial drop from the $310,000 McCarthy agreed to pay. But a decrease in the value of the property and a loss of potential profit are by themselves insufficient to justify relief. "The frustration must be so severe that it is not fairly to be regarded as within the risks that [the affected party] assumed under the contract".[2]

As a general rule, courts have held that absent an express allocation of risk to the seller, the risk of loss from a change in zoning regulations is foreseeable, and therefore a purchaser of real property assumes the risk that such a change will take place.[3] McCarthy knew that the laws relating to land development were subject to change in the future. He drafted the option and sales contracts. He "could have controlled the language of the contract to the extent of allocating the risk".[4] For example, he could have negotiated for a provision making the contract contingent upon obtaining all permits and approvals required for development.

McCarthy claims he assumed only the risk that he might fail in securing a rezone. The risk he claims he could not have foreseen and therefore could not assume or allocate was the risk that wetlands legislation would virtually eliminate the possibility of any further development of the property. McCarthy presents undisputed evidence, through the affidavit of a former Snohomish County plan-

---

[1]*Washington State Hop Producers, Inc. Liquidation Trust v. Goschie Farms, Inc.*, 112 Wn.2d 694, 700, 773 P.2d 70 (1989) (quoting § 265).

[2]*Hop Producers*, at 700 (quoting § 265, comment a).

[3]*See Mohave County v. Mohave-Kingman Estates, Inc.*, 120 Ariz. 417, 586 P.2d 978, 984 (1978).

[4]*Hop Producers*, at 708; *see, e.g., West Los Angeles Inst. for Cancer Research v. Mayer*, 366 F.2d 220 (9th Cir. 1966), *cert. denied*, 385 U.S. 1010 (1967).

ner, that the wetlands legislation came as a "complete surprise" to owners, developers, and realtors in the County, and that neither he nor Felt had reason to suspect that the property would be characterized as wetlands. He argues that these facts are similar to those on which the Supreme Court excused performance in *Weyerhaeuser Real Estate Co. v. Stoneway Concrete, Inc.*[5]

The transaction involved in *Weyerhaeuser* was a nine-year mineral lease between Weyerhaeuser and Stoneway effective January 1, 1970. The onset of the environmental movement, together with the enactment of the State Environmental Policy Act of 1971 (SEPA), resulted in overwhelmingly negative public reaction to the proposed strip mining operation. In mid-1975, Stoneway abandoned the project. The trial court found that the intensity of public opposition was an unforeseeable event, making the performance of the contract "vitally different from what was reasonably to be expected by the parties when the lease was entered into".[6] The Supreme Court affirmed the trial court's decision to apply the doctrine of supervening frustration in these circumstances.

■■ Contrary to McCarthy's argument, *Weyerhaeuser* does not hold that a court may excuse performance merely upon a showing that the specific frustrating event was unforeseeable. The more fundamental inquiry is whether "the assumed possibility of a desired object or effect to be attained by either party forms the basis on which *both parties* enter into it".[7] "The object must be so completely the basis of the contract that, as *both parties* understand, without it the transaction would make little sense".[8]

In *Weyerhaeuser*, the court accepted as given that Stone-

---

[5] 96 Wn.2d 558, 637 P.2d 647 (1981).

[6] *Weyerhaeuser*, at 564 (quoting trial court's finding of fact).

[7] (Emphasis added.) *Weyerhaeuser*, at 562 (quoting Restatement of Contracts § 288, at 426-27 (1932)).

[8] (Emphasis added.) *Hop Producers*, at 700 (quoting Restatement (Second) of Contracts § 265, comment a).

way's purpose formed "the basis on which both parties entered the lease".[9] Weyerhaeuser itself had made studies indicating that the land in question was suitable for Stoneway's purposes. Weyerhaeuser agreed to assist Stoneway in securing the needed permits and gave public assurances that Stoneway's project would respond to environmental concerns. If Stoneway could not get the permits, the transaction made little sense to either party.

The present transaction made sense from Felt's perspective without regard to McCarthy's eventual success or failure. Taking all inferences in McCarthy's favor, it must be granted that Felt knew the property was not worth the sale price unless it had development potential; Felt knew McCarthy hoped to develop the property as a business park; and Felt may well have assumed that McCarthy would succeed in doing so. But what is lacking in comparison to *Weyerhaeuser* is any evidence that Felt entered into the contract on the *basis* of that assumption. Felt's sole concern was selling the property at the highest possible price. Once the sale closed, Felt had no responsibility with respect to the property and no ongoing interest in McCarthy's success or failure.

Both parties are more likely to make the fulfillment of one party's development goals a shared basis for contracting when the transaction involves a specific purpose lease, as in *Weyerhaeuser*, than when it involves a completed sale of real property. A lessor expects to have an ongoing relationship with the lessee, while a seller of real property expects to be finished with the transaction when it closes. Here, to the extent the 1983 option agreement made Felt's goal of selling the property dependent upon McCarthy's obtaining a rezone, that shared interest ended in 1986 when Felt conveyed the property to McCarthy. The fact that McCarthy went through with the purchase under the option agreement despite having just been turned down for a rezone indicates that he did not expect Felt to assume the risk of nondevelopment. The frustrating event—

---

[9]*Weyerhaeuser*, at 562.

the unforeseen enactment of wetlands legislation—happened well after the option agreement was fully executed and McCarthy had received the beneficial use of the property as security to procure financing.

McCarthy also relies on *Savage v. Formanek*,[10] but that case reinforces the requirement that both parties enter into the contract with the same basic assumption. The Formaneks, owners of land near the Minnesota River in the City of Savage, agreed to pay special assessments to the city pursuant to a city-sponsored industrial development project. After improvements were made, the Army Corps of Engineers assumed project-specific permitting authority over the land. This unanticipated action effectively halted development. The court applied the doctrine of supervening frustration to excuse the Formaneks from payment of further assessments. Both parties—the city and the Formaneks—had an interest in seeing the industrial development go forward. "Both parties testified that they would not have entered the agreement if they had known the Corps might require further permits".[11] Also, before entering into the agreement with the city, the owners had contacted the City Engineer and Corps representatives and eventually obtained assurances from the City Engineer that permitting for the project was complete. Felt gave McCarthy no similar assurance that the way was clear for development. There is no evidence that Felt would have been less willing to sell the property if the risk of wetlands legislation had been specifically foreseen.

McCarthy essentially seeks to transfer the risk of loss in a speculative real estate transaction to a less sophisticated seller who made a complete conveyance for a cash price and retained no further involvement with the property, not even by way of a security interest. Certainly McCarthy would not have expected Felt to share in his profits if the

---

[10]459 N.W.2d 173 (Minn. Ct. App.), *review denied* (Oct. 25, 1990).

[11]*Formanek*, at 177.

development were able to proceed without obstacle. Absent an express assumption of risk by Felt, it is inequitable to impose the risk upon that party as a matter of law. The judgment is affirmed. Attorney fees on appeal are awarded to Felt pursuant to the promissory note, subject to further compliance with RAP 18.1.

Cox and AGID, JJ., concur.

Reconsideration denied July 28, 1995.

Review granted at 128 Wn.2d 1011 (1996).