[No. 63317-7. En Banc.]

Argued May 14, 1996. Decided September 12, 1996.

DONA L. FELT, ET AL., *Respondents*, v. THOMAS C. McCARTHY, ET AL., *Petitioners.*

*Thomas C. McCarthy*, pro se.
*J. Robert Leach*, for respondents.

DOLLIVER, J. — Defendants defaulted on a promissory

note that was given to Plaintiffs as part of the purchase price for a nine-acre lot, and Plaintiffs sued to enforce the note. Defendants claim "frustration of purpose" excuses them from making further payments on the note because newly-enacted wetlands regulations prevented them from developing the land as a business park. Both the trial court and the Court of Appeals granted summary judgment for Plaintiffs. We affirm.

Plaintiffs Dona and Charles Felt owned a nine-acre lot, which was dissected in the middle by the North Creek. The lot was zoned Rural Conservation, but the North Creek Comprehensive Plan designated the land as Business Park. Other properties in the immediate area had already been rezoned as Business Park, and there were completed and ongoing business developments on some of those neighboring properties.

In 1983, Thomas C. McCarthy and Ronald F. Tasso, who is not a party to this case, began gathering adjoining parcels of property in Snohomish County for the purpose of developing a business park. McCarthy approached the Felts to discuss his plan for developing a business park. In 1983 McCarthy and Tasso obtained an option agreement from the Felts to purchase the nine acres for $260,000. In the agreement, the Felts promised to help McCarthy and Tasso rezone the property to Business Park, and McCarthy and Tasso agreed to pay all costs associated with the rezone application.

McCarthy and Tasso applied to rezone 123 acres including the Felt property. In November 1985, the rezone application was denied without prejudice because McCarthy and Tasso held ownership interests in only 47 of the 123 acres.

Even though they failed to rezone the property, McCarthy and Tasso purchased the nine acres from the Felts in December 1986. The purchase price was $310,000. Part of the price was met by an $80,000 down payment, and McCarthy and Tasso each gave an unsecured promissory

note for $89,627.84. The purchasers satisfied the remainder of the purchase price by assuming an old mortgage on the Felt property, paying closing costs, and receiving credit for option fees previously paid to the Felts. The Felts conveyed the property to McCarthy and Tasso by statutory warranty deed, and the Felts retained no interest in the land whatsoever. The sales contract placed no conditions on the sale.

In a transaction related to their purchase of the Felt property, McCarthy and Tasso borrowed $122,800 from Harry H. Olson, Inc. The lender obtained a deed of trust for the Felt property as security for this loan.

In January 1987, the Army Corps of Engineers released its Wetlands Delineation Manual. Soon thereafter, Snohomish County adopted several motions to protect wetlands. Although it was not immediately clear how these regulations affected the Felt property, by November 1990 McCarthy learned that the regulations rendered the Felt acreage useful only as a single homesite or as open space. In the trial court, McCarthy submitted a declaration from a real estate broker who set the estimated value of the Felt property at only $50,000 as a result of the wetlands regulations. Plaintiffs never contested this estimate.

Even before they were aware of the wetlands restrictions on the Felt property, McCarthy and Tasso defaulted on the loan repayments to Harry H. Olson, Inc. for the $122,800 loan which was secured by the Felt property. A notice of default was mailed to McCarthy and Tasso on May 24, 1988. On January 25, 1991, McCarthy and Tasso still had not cured the default, so the property was foreclosed and sold at public auction. According to the trustee's deed, the Felt property was sold for the sum of $240,338.30, in complete satisfaction of McCarthy's and Tasso's obligations under the original loan from Harry H. Olson, Inc.

Soon after the Felt property was sold in foreclosure, McCarthy defaulted on the promissory note held by the Felts. Dona Felt and the representative of her deceased hus-

band's estate brought an action against McCarthy and his wife to collect the unpaid portion of the promissory note, plus interest and attorney fees. Tasso's note was not involved in the case. McCarthy raised the affirmative defense of commercial frustration, or frustration of purpose, and argued the court should excuse all unpaid portions of the note since the property was worth only $50,000. The trial court granted summary judgment for the Felts. The Court of Appeals found the frustration of purpose doctrine was not applicable to the facts of the case and affirmed the trial court. *Felt v. McCarthy*, 78 Wn. App. 362, 898 P.2d 315 (1995), *review granted*, 128 Wn.2d 1011 (1996). We also affirm.

■ McCarthy's frustration argument is fatally flawed. He claims his plans to develop a business park were frustrated by wetlands regulations. The facts show that McCarthy's plans were not frustrated by wetlands regulations; they were frustrated by his failure to repay the loan obtained from Harry H. Olson, Inc. McCarthy's first default on the loan payments occurred in 1988, two years before McCarthy even learned about the impact of the wetlands regulations on the Felt property. Nonetheless, because this court is reviewing a summary judgment favoring Plaintiffs, the facts should be considered in the light most favorable to the nonmoving party. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996). We will assume that wetlands regulations effectively prevented McCarthy from developing the business park.

■■ Application of the doctrine of frustration is a question of law. *Washington State Hop Producers, Inc. Liquidation Trust v. Goschie Farms, Inc.*, 112 Wn.2d 694, 704, 773 P.2d 70 (1989). This court has adopted the doctrine as stated in RESTATEMENT (SECOND) OF CONTRACTS § 265 (1979). *Hop Producers*, 112 Wn.2d at 700. This section, entitled "Discharge by Supervening Frustration," states:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence

of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

RESTATEMENT (SECOND) OF CONTRACTS § 265 (1979).

Comment *a* to this section gives a detailed explanation of how the rule should be applied. It states, in part:

> The rule stated in this Section sets out the requirements for the discharge of that party's duty. First, the purpose that is frustrated must have been a principal purpose of that party in making the contract. It is not enough that he had in mind some specific object without which he would not have made the contract. The object must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense. Second, the frustration must be substantial. It is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss. The frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract. Third, the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made. . . .

The Court of Appeals applied section 265 to the facts and held McCarthy's successful development of the Felt property as a business park was *not* a basic assumption on which both the Felts and McCarthy entered into the contract. The Court of Appeals' decision focused on whether the frustrated purpose — McCarthy's attempt to develop a business park — was "so completely the basis of the contract that, as *both parties* understand, without it the transaction would make little sense.' " *Felt*, 78 Wn. App. at 367 (quoting *Hop Producers*, 112 Wn.2d at 700).

■ The Court of Appeals' reasoning closely follows comment *a* of section 265, and the facts of the case support the court's holding. None of the facts support McCarthy's claim that the Felts entered into the sales contract *on the basis* that McCarthy hoped to turn the property into a

business park. If the Felts did not share McCarthy's assumption that the park would be successful, commercial frustration does not apply. *See Hop Producers,* 112 Wn.2d at 706 (the need to own hop base was an assumption central to the contract, without which there would neither have been an offer nor an acceptance); *Weyerhaeuser Real Estate Co. v. Stoneway Concrete, Inc.,* 96 Wn.2d 558, 562, 637 P.2d 647 (1981) (Stoneway's purpose for leasing the property formed the basis on which both parties entered the lease). Even though the Felts knew of McCarthy's business park goal, the Felts did not enter into the sales contract on the assumption that McCarthy would be successful in fulfilling his goal.

McCarthy claims the Felts' reasons for entering into the contract are irrelevant. According to McCarthy, the frustrated party's intentions for entering into the contract are considered under the frustration doctrine, but the other party's intentions are irrelevant. This contention is erroneous. As discussed above, RESTATEMENT (SECOND) requires both parties to the contract to share in the assumption that the particular purpose would not be frustrated.

█ The Felts sold their property free and clear, retaining not even a security interest in it. While the Felts promised to help rezone the property in the 1983 option agreement, the 1986 sales contract placed no requirements on the Felts. Once the sales contract closed, McCarthy, as the new owner of the property, implicitly assumed all risks that his planned use of the property would become frustrated due to any future occurrence, whether or not the occurrence was foreseeable. *See Scott v. Petett,* 63 Wn. App. 50, 816 P.2d 1229 (1991) (purchaser closed the real estate sale after expiration of 90-day contingency period, thereby assuming all risks of the land being unsuitable for his intended use); *cf. Pierce County v. King,* 47 Wn.2d 328, 287 P.2d 316 (1955) (if purchaser in an executory real estate contract has received either legal title or possession of the premises, purchaser is responsible for loss or de-

struction of property and is not thereby relieved from a duty to pay the price).

McCarthy drafted the sales contract for his purchase of the Felt property. If he wanted the real estate deal to be conditioned upon his successful development of a business park, he clearly had the power to include that condition in the contract. However, McCarthy failed to assign any risk of his business park failure to the Felts, and this court should not correct his mistake by using the frustration doctrine to implicitly read such an assignment into the sales contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 206 (1979) ("In choosing among the reasonable meanings of a[n] . . . agreement. . ., that meaning is generally preferred which operates against the party who supplies the words . . . ."); *see also Dudley v. St. Regis Corp.*, 635 F. Supp. 1468, 1472 (E.D. Mo. 1986) ("Public policy requires that the doctrine of commercial frustration 'be limited in its application so as to preserve the certainty of contracts.'") (quoting *Dutton v. Dutton*, 668 S.W.2d 585, 591 (Mo. Ct. App. 1984)).

Even if the Felts had shared in the assumption the business park would be successful, McCarthy's frustration was not "substantial" as required by section 265, comment *a*. McCarthy's claim of frustration rests on the property's alleged drop in value from $310,000 to $50,000. However, a decline in market value is not sufficient in and of itself to support a finding of frustration. *Hop Producers*, 112 Wn.2d at 703 (citing and quoting RESTATEMENT (SECOND) OF CONTRACTS § 265 cmt. a (1979)). Furthermore, the expert's $50,000 valuation of the Felt property is brought into question by the fact that the land was sold at public auction in January 1991 for $240,338.30.

Since the commercial frustration doctrine fails to excuse McCarthy's payments under the promissory note, we affirm the Court of Appeals and uphold summary judgment for the Felts. The Felts are also awarded attorney fees on appeal in accordance with the terms of the promissory note and RAP 18.1.

SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, AND TAL-
MADGE, JJ., concur.

DURHAM, C.J., (concurring) — I concur in that portion
of the majority opinion which declines to apply the doc-
trine of frustration to remedy McCarthy's failure to al-
locate the risk of his frustration in the contract itself. As
we suggested in *Washington State Hop Producers, Inc.
Liquidation Trust v. Goschie Farms, Inc.*, 112 Wn.2d 694,
708, 773 P.2d 70 (1989), the doctrine of frustration may
not excuse a failure to allocate foreseeable risks where the
party claiming frustration could have controlled the
language of the contract to the extent of allocating that
risk. Whether or not the peculiar imposition of wetlands
regulation was foreseen by the parties, the general risk of
frustration due to land use regulation is foreseeable. *Felt
v. McCarthy*, 78 Wn. App. 362, 366, 898 P.2d 315 (1995)
(citing *Mohave County v. Mohave-Kingman Estates, Inc.*,
120 Ariz. 417, 586 P.2d 978, 984 (1978)). Absent an express
allocation of that risk to the seller, the buyer-developer
assumes such risk.

SANDERS, J., (concurring) — I agree with the majority
that "frustration of purpose" does not excuse McCarthy's
payments on the promissory note, but I recognize his
frustration.

### Fully Executed Contract

Commercial frustration is not a defense for McCarthy
because he had already completed his obligations arising
from the original transaction by the time he defaulted on
the note.

In December 1986, McCarthy exercised his option to
purchase the Felts' land and the sale closed. In return for
a statutory warranty deed, McCarthy paid the Felts a cash
down payment of $119,963.55 plus delivered a promissory
note for $89,627.84. "As between the maker and the payee,

a promissory note is but a simple contract to pay money." *Vancouver Nat'l Bank v. Katz*, 142 Wash. 306, 313, 252 P. 934 (1927). In this case, this purchase was complete when the Felts exchanged the title for cash and the promissory note. *See Charleston Hills Nat'l Mines v. Clough*, 79 Nev. 182, 380 P.2d 458, 461 (1963) ("In the present case the contracts between the corporation and respondent represented by the two promissory notes became complete upon her [respondent's] acceptance of the notes . . . .").

In *Edwards v. Petrone*, 160 Wis. 2d 255, 465 N.W.2d 847, 848 (1990), *review denied*, 471 N.W.2d 510 (1991), the payor of a promissory note, Petrone, refused to pay the remainder of the note to the payee, Edwards, and claimed the affirmative defenses of failure of consideration and accord and satisfaction. In holding that the defense of failure of consideration was not available to the payor, the court noted that an executed contract is a contract in which all promises have been fulfilled and nothing remains to be done, while an executory contract is one in which the parties have bound themselves to future activity that is not yet completed. *Id.* The court concluded:

> The promissory note from Petrone to Edwards is an executed contract. Edwards delivered $50,000 to Petrone and Petrone, in exchange, gave his written promise, the promissory note, to repay the money. Promises were exchanged and nothing more had to be done to complete the contract. The requirement that Petrone make payments does not make the promissory note an executory contract. All of the acts necessary to give rise to Petrone's obligation—a delivery of money and a promise to repay—have been performed.

*Id.* (citations omitted). *See also Hotchkiss v. James*, 65 N.E.2d 161, 163 (Ohio Ct. App. 1945) ("Therefore at the moment the note was delivered to the plaintiff the obligation of defendant under the contract was fully performed.")

When McCarthy delivered the down payment and promissory note to the Felts and they, in turn, conveyed the property to him, the purchase and sale contract was executed. However, it was this contract which McCarthy now

claims was frustrated by the Snohomish County wetlands motions. McCarthy's default, however, was on the promissory note, a separate contract. McCarthy cannot be excused from his obligations under the promissory note based upon the frustration of the first contract. "[E]ven a plausible claim of frustration asserted with respect to a contract that has been fully performed is almost certain to fail." Andrew Kull, *Mistake, Frustration, and the Windfall Principle of Contract Remedies*, 43 HASTINGS L.J. 1, 18 (1991).[1]

## Frustration

Other than the fully executed nature of this purchase transaction, this case is remarkably similar to *Weyerhaeuser Real Estate Co. v. Stoneway Concrete, Inc.*, 96 Wn.2d 558, 637 P.2d 647 (1981). In *Weyerhaeuser*, we stated that where there is a "supervening event" that frustrates the purpose forming the basis of the lease and this event is, or reasonably should have been, foreseen by the parties and there is no provision in the lease concerning it, then an inference that the risk was assumed by the promisor is justified. *Id.* at 564. We then determined that the denial of the necessary permit was not foreseeable because of unanticipated "flood of environmental legislation and litigation . . . which motivated environmentalists to adamant opposition" to the strip-mining project which was the purpose of the lease. *Id.* Of particular note to the court was the fact that Stoneway produced and sold sand, gravel, concrete, and asphalt. *Id.* at 562-63. That is, the court was particularly cognizant of the fact that the party wishing to use the land was in the business of producing materials associated with the expected use of the land. The fact that Stoneway was a gravel company weighed heavily in our

---

[1]I decline the opportunity to examine whether the defense of frustration on the underlying contract is available to McCarthy under RCW 62A.3-305(a)(2) because it has not been adequately briefed. *But see Resolution Trust Corp. v. Maplewood Invs.*, 31 F.3d 1276, 1283-84 (4th Cir. 1994) (holder able to assert common law defense of underlying contract in suit on the note assuming no statutory limitations or procedural bars).

determination that use of the land for gravel production was the basis of the entire contract.

From all appearances in the record, it is clear that Mc-Carthy was a *land developer* and that he purchased the land in question in order to develop it, consistent with existing zoning, as a business park. The majority opinion acknowledges this. Majority Op. at 205. The Felts understood this. Indeed, in the option contract, the Felts agreed to, among other things, a clause that read:

> Upon request by Purchaser, Seller shall execute an application to have said property rezoned to a business park land use classification . . . .

Clerk's Papers at 49.

McCarthy paid a high price for the land because he expected it could be used for a business park. The Felts did not dispute a subsequent appraisal of the land at only $50,000 assuming no potential business park use. In contrast, the purchase price McCarthy bargained for with the Felts was $310,000 based on the business park expectation. Obviously, McCarthy's purpose to purchase the parcel was to develop a business park. And, in fact, the record shows that absent the prospect of eventual development of the business park McCarthy would not have purchased the land. *See Washington State Hop Producers, Inc. Liquidation Trust v. Goschie Farms, Inc.*, 112 Wn.2d 694, 700, 773 P.2d 70 (1989).

Moreover, it is hard to see how the county wetlands motions in this case were foreseeable while the negative public reaction to development in *Weyerhaeuser* was not. McCarthy may have been a skilled land use lawyer, but clairvoyance about future governmental actions is beyond any mortal.

It should be noted, however, it is not clear these motions would have affected the use of this plot of land. The wetlands motions in this case were just that: motions. The basic rule in land use law is that, absent more, an individual should be able to use his land as he sees fit. *Norco Con-*

*str., Inc. v. King County,* 97 Wn.2d 680, 684, 649 P.2d 103
(1982). A land use ordinance has the force of law, and
anything less is only a mere expression of opinion. *Baker
v. Lake City Sewer Dist.,* 30 Wn.2d 510, 518, 191 P.2d 844
(1948). Also, the Snohomish County Charter requires all
land use regulations to be adopted by ordinance. Snohom-
ish County Charter § 2.20(4). Therefore, short of Snohom-
ish County's adoption of an ordinance, preexisting land
use restrictions did not change.

For these reasons, I concur McCarthy cannot be law-
fully excused from paying the remainder of the promis-
sory note under the doctrine of commercial frustration.