# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| In the Matter of the Marriage of | ) No. 79376-4-I |
| | ) |
| RONALD P. HUNTER, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| and | ) |
| | ) UNPUBLISHED OPINION |
| CHRISTIE JULIE MARIE CANO, | ) |
| | ) FILED: August 26, 2019 |
| Appellant. | ) |

VERELLEN, J. — Modifications to a parenting plan must be in the best interests of the children. Here, the trial court did not adequately consider the statutorily mandated factors or the children's current needs. Rather, the court relied on an invalid arbitrator's decision and an underdeveloped factual record to order the entry of a new parenting plan.

Therefore, we vacate the arbitrator's decision and the court's entry of the parenting plan, and we remand for proceedings consistent with this opinion.

## FACTS

Ron Hunter and Christie Cano dissolved their marriage in 2009. The court adopted a parenting plan for their two children. Their son and daughter are now 17 and 11, respectively. Their son suffers from a medical condition

that causes frequent migraines and requires medication. The 2009 parenting plan requires a 50-50 split of certain medical expenses for the children. In March of 2016, Cano sought reimbursement of child-related expenses from Hunter. In June of 2016, Hunter petitioned to modify the parenting plan. The parties stipulated adequate cause warranted modification, and they entered mediation.

Mediation resulted in three CR 2A agreements. The parties signed two CR 2A agreements on August 31, 2016. One agreement temporarily limited Hunter's time with his children from overnights every other Saturday to eight hours every other Saturday, required the immediate start of family counseling, and allowed for the use of an arbitrator to choose a counselor. The other agreement managed communications between the parents.

The CR 2A agreement central to this appeal was signed in February of 2017 and included a condition precedent to entering the new parenting plan attached to the agreement:

> Attached hereto are the provisions for [the] final parenting plan that will be entered with the court after Loran Inman has completed his therapy with the parties and children. This plan or portions of this plan may be implemented by Loran Inman prior to his completion of the therapy at his discretion. Both parents shall cooperate and follow the recommendations and directions of Loran Inman.[1]

---

[1] Clerk's Papers (CP) at 519.

2

The agreement also required both parties and their children to "immediately" enter counseling with Inman and gave Inman the power to "determine the structure of the therapy to re-unify the father's relationship with the children."[2] The agreement "contemplated that the therapy with Loran Inman will last approximately [three] months."[3] The CR 2A continued the limitations on Hunter's residential time "until Loran Inman has directed or recommended otherwise."[4] The agreement also contained an arbitration clause and a clause authorizing court costs and attorney fees.

Hunter and his children soon began therapy with Inman. After more than three months of therapy, Inman reported Hunter "has 'not believed'" that his son has a medical condition and "has 'withheld' medication from him on one occasion."[5] Inman also stated, "The children have made their point very clear that they do not desire to have contact with their father, and do not enjoy the contact that they do have."[6] Counseling continued. In October of 2017, Inman concluded, "[M]ore intensive therapy is required to benefit this family and allow for [family] reconciliation to occur."[7] But because Inman's schedule did not let

---

[2] Id.
[3] Id.
[4] CP at 520.
[5] CP at 540.
[6] Id.
[7] CP at 543.

3

him see Hunter and his children more frequently, he discontinued therapy and referred them to a new therapist.

On December 9, Hunter lost his temper, cursed at and insulted his kids.[8] On December 18, Cano's attorney sent Hunter's attorney a letter saying that Cano would "not allow unsupervised visitation between Mr. Hunter and the children" until "the parties and children resume counseling."[9] The next day, Hunter filed a motion to enforce the portion of the CR 2A regarding visitation.

---

[8] This incident occurred after Hunter took his children to the Scottish Highland Games. Hunter's son recorded a video of his father's outburst:

| | |
|---|---|
| Son: | You need counseling. You need like--you have psychological problems. |
| Hunter: | No, you do. You guys let your mom turn fuckin' against your own dad, this is ridiculous. |
| Daughter: | Yeah, because you're freaking-- |
| Hunter: | I haven't molested you. I haven't done anything to you. |
| Son: | It's mental, it's mental stuff. You yell at us all the time. |
| Hunter: | Because I want to be with my own flesh and blood? Fucking culture then, whatever bullshit your mom tells you. |
| Son: | Yeah. You want to be with your own flesh and blood, but you yell at us. |

CP at 569.

[9] CP at 343.

4

Commissioner Judson granted the motion and ordered that the parties follow the residential placement provisions of the CR 2A. The court also scheduled a review hearing for January 2018 to see whether Hunter resumed therapy. Hunter briefly saw a new therapist in February and March of 2018 but stopped, apparently because it was not covered by insurance.

In May, Hunter alleged that Cano denied his last three visits and moved to enforce the residential time provisions of the CR 2A to find Cano in contempt. Judge Garratt heard the motion. The court found Cano in contempt. Judge Garratt's order required compliance with the arbitration provision of the CR 2A and that "[a]ny disputes with a final parenting plan will be submitted to [the arbitrator]."[10] It also required entry of "a final parenting plan from the Feb. 2, 2017, CR 2A within 60 days of this order unless superseded by further court order."[11]

On July 31, 2018, Hunter filed a motion to enforce the CR 2A and enter the parenting plan. In response, Cano moved to enforce the therapy provisions of the CR 2A. Judge Rietschel heard argument on the motions. Relying on Judge Garratt's order, the court ordered the parties to "submit to binding arbitration" to determine whether Hunter satisfied the condition precedent in the CR 2A.[12] But the court also observed in its oral ruling "that the conditions

---

[10] CP at 424.

[11] CP at 423-24.

[12] CP at 932.

5

precedent in the CR 2A have not been met for that parenting plan to be entered."[13] The court scheduled a review hearing to follow arbitration.

In October, the arbitrator sent the parties a letter defining the scope of arbitration. Believing it to be detrimental, Cano moved to vacate the CR 2A, to enter an order stating arbitration was not required, to enter a temporary parenting plan, and set a trial schedule for Hunter's motion to modify. The court declined to consider Cano's motion until after arbitration.

On November 14, 2018, the arbitrator issued his decision. He concluded that Hunter substantially complied with the therapy requirements in the CR 2A and that the parties failed to comply with Judge Garratt's order requiring entry of the parenting plan. He decided the "final parenting plan should immediately be prepared and entered with the court no later than November 30, 2018."[14]

Relying on that decision, Judge Rietschel denied Cano's motion to vacate the CR 2A agreement, denied her request for a temporary parenting plan, and ordered that the parties sign the parenting plan in the CR 2A within 10 days. Hunter and Cano signed the 2018 parenting plan on November 30, and the court entered that parenting plan.

Cano appeals.

---

[13] CP at 956.
[14] CP at 976.

ANALYSIS

The core of Cano's argument on appeal is that the court erred by ordering arbitration and by relying on the arbitrator's decision when entering the 2018 parenting plan. We review arbitrability decisions for a CR 2A agreement de novo.[15] Whether a dispute is arbitrable is determined by the parties' agreement.[16] If a court "'can fairly say that the parties' arbitration agreement covers the dispute, the inquiry ends because Washington strongly favors arbitration.'"[17] But any decision by an arbitrator beyond his authorized scope is subject to vacation.[18]

The February 2017 CR 2A allows for arbitration:

> The parenting plan attached shall be re-drafted into the new family law forms. If there is any dispute on the final parenting plan to be entered that issue will be submitted to Timothy G. Edwards as binding arbitrator. The sole purpose of this provision is to have the actually [sic] wording of the final parenting plan approved and entered with the court.[19]

By its terms, the only disputes subject to arbitration are those "on the final parenting plan" where the parties contest the plan's "actual[ ] wording."[20] This

_____

[15] In re Marriage of Pascale, 173 Wn. App. 836, 841, 295 P.3d 805 (2013).

[16] Id. at 842.

[17] Id. at 842 (quoting Davis v. Gen. Dynamics Land Sys., 152 Wn. App. 715, 718, 217 P.3d 1191 (2009)).

[18] Price v. Farmers Ins. Co. of Wash., 133 Wn.2d 490, 500, 946 P.2d 388 (1997).

[19] CP at 576.

[20] Id.

7

narrow arbitration clause does not extend to any dispute over the terms of the CR 2A agreement apart from the terms of the parenting plan attached to the CR 2A agreement.

Judge Garratt ordered entry of a final parenting plan and that "[a]ny dispute with a final parenting plan will be submitted to Timothy Edwards for binding arbitration."[21] But this seemingly broad authorization for arbitration is limited by the scope of the parties' agreement.[22]

A few months later, Judge Rietschel considered the parties' cross motions to enforce the CR 2A agreement and concluded the condition precedent was not met. The court did not resolve the dilemma of how to proceed, though, because

> I'm as bound by [Judge Garratt's] order as everyone else. [T]he parties have to go back to binding arbitration because there is a dispute about the parenting plan. What do the parties do now that the conditions precedent to the agreed parenting plan have not been met? I think that's clearly an issue for the arbitrator.[23]

Whether Hunter satisfied the condition precedent and what to do upon failure to satisfy the condition precedent both stem from the CR 2A agreement, not the language of the parenting plan. Neither Judge Garratt's order nor the CR 2A agreement authorized arbitration for disputes arising out of the

---

[21] CP at 424.

[22] See Price, 133 Wn.2d at 500 ("[T]he arbiter's authority is limited by that which is submitted pursuant to the agreement to arbitrate."); see also Pascale, 173 Wn. App. at 842 ("The arbitrability of a dispute is determined by . . . the arbitration agreement.").

[23] CP at 957.

8

agreement itself. Because the parties' did not agree to arbitrate disputes arising solely out of the CR 2A agreement, arbitration was not appropriate.

Hunter contends the parties' agreed to binding arbitration by filing a notice of settlement. The notice of settlement is a generic document used to update the court and assist with the court's management of its caseload and calendar. It recites, "[The] parties have agreed to resolve all remaining outstanding issues in this matter through binding arbitration."[24] Hunter cites no authority for the proposition that an administrative notice from the parties to the court, at least in this setting, overrides the bargained terms within the CR 2A agreement itself.

The parties dispute whether the arbitrator exceeded the scope of arbitration. Because arbitration itself was inappropriate, any decision by the arbitrator was beyond the proper scope of the arbitration. And even if arbitration were authorized to resolve the condition precedent, the arbitrator exceeded his authority by recommending immediate entry of the final parenting plan by November 30, 2018, and by deciding that Hunter's residential time "should be as provided in that final parenting plan" beginning in December 2018.[25] Both decisions involve the operation of the CR 2A agreement rather than the wording of the parenting plan itself. Thus, the arbitrator exceeded the scope of arbitration and, accordingly, we vacate the arbitrator's decision.

_____

[24] CP at 81.
[25] CP at 976.

Cano argues the court erred when it entered the 2018 parenting plan because it relied upon the arbitrator's improper decision. We review entry of a parenting plan for abuse of discretion.[26] A court abuses its discretion where its decision rests on untenable factual grounds or was made for untenable reasons in reliance upon an incorrect legal standard.[27]

A trial court must independently review all proposed modifications to a parenting plan.[28] The children's best interests determine the propriety of a modification to a parenting plan's residential schedule.[29] RCW 26.09.187(3)(a) lists factors a court must consider before setting the residential provisions of a permanent parenting plan. For a residential schedule, the children's best interests "must be based on the statutory factors and the circumstances of the parties as they exist at the time of trial."[30]

The court's oral ruling simultaneously considered Cano's motion to vacate and Hunter's motion to enforce the CR 2A agreement:

> [I] sent you back to arbitration because it was clear that there was a problem in that [Hunter] had agreed to a counseling condition that amounted . . . to a condition precedent. . . .

---

[26] In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997).

[27] Id. at 46-47.

[28] In re Marriage of Coy, 160 Wn. App. 797, 804, 248 P.3d 1101 (2011).

[29] Id. (citing RCW 26.09.260(1)).

[30] Littlefield, 133 Wn.2d at 56.

The part of the [arbitrator's] decision that [I am] most interested in and [I] did review it in full, was that the arbitrator found that the first expert referred the parties to the second counselor Inman. It was the arbitrator's decision that [Inman] went beyond [the CR 2A agreement], that the compliance asked for exceeded the expectation. The arbitrator found that there was substantial compliance in terms of the counseling by the petitioner. That is the precise issue that [I] referred to arbitration. Given that decision, given the prior CR 2As, given the decision of Judge Garratt, there is no legal basis that I see to vacate any of the CR 2A.

The review that this court does on parenting plans is whether they are in the best interest of the children. I take seriously [Cano's] position that [she] doesn't believe that the parenting plan entered—years ago by now—under the CR 2A is in the best interest of the children. But it is hard for this court to make that judgment based on what [it] has in front of it at this time. What I have is the decision of the arbitrator, the CR 2As, counseling recommendations, and clearly a long period of time where [Hunter] has had very little access to his children . . . . I don't have enough information before me to make a judgment that the parenting plan is not in the best interest of the children. And therefore, I am going to . . . deny the motion to vacate.[31]

We recognize this was an unusual situation, but the court erred by denying the motion to vacate and entering the parenting plan based on the record before it. The court relied heavily on the arbitrator's unauthorized decision when denying the motion to vacate the CR 2A agreement. Before entering a parenting plan, a court must consider seven statutory factors.[32] The arbitrator did not consider those factors before ordering entry of the parenting plan.[33] The court relied on the arbitrator's deficient decision, in addition to other

---

[31] RP (Nov. 19, 2018) at 48-50.

[32] RCW 26.09.187(3)(a).

[33] CP at 965-76.

evidence, when considering the best interests of the children. And the court did not expressly weigh all seven factors itself when considering the children's best interests. The court appears to assume that the proposed parenting plan is in the children's best interests and instead finds insufficient information to unsettle that assumption.

For these reasons, we vacate the November 19, 2018 order on Cano's motion to vacate the CR 2A agreement, entry of the parenting plan, and all other orders appealed. We remand for further proceedings consistent with this opinion.

Essentially, this restores the 2009 parenting plan and resets this case to when Hunter's motion to modify the 2009 plan was pending. The parties have stipulated that adequate cause existed for the modification. The parties are governed by the February 2017 CR 2A agreement. They disagree whether Hunter's attendance of more than three months of therapy satisfied the condition precedent in the CR 2A agreement and whether his refusal to attend additional therapy repudiates the CR 2A agreement.

On remand, the ultimate goal is for the trial court itself to enter a permanent parenting plan that serves the best interests of the children at the time of entry.[34] Although the trial court has broad discretion on remand, it appears the issues to be addressed fall into four categories.

---

[34] Of course, if necessary, the court has the authority on remand to require the parties to provide adequate and current information.

First, has Hunter repudiated the CR 2A agreement? If the agreement has been repudiated, then the parties will be governed by the 2009 parenting plan subject to any motions to modify the terms of that plan.

Second, if the CR 2A agreement has not been repudiated, then has the condition precedent of the CR 2A agreement been satisfied? If the condition has been satisfied, then the court should proceed to address entry of the parenting plan attached to the CR 2A agreement, including whether that plan is in the current best interests of the children. If the condition precedent has not been satisfied, then the court should resolve whether additional delay to pursue further treatment efforts is warranted or should be abandoned. This decision must be based upon the current best interests of the children.

Third, at any point when considering the viability of any aspect of the CR 2A agreement, if the court concludes protecting the current best interests of the children is inconsistent with and frustrates the purpose of the CR 2A agreement, then the parties' obligations under that agreement should be discharged and the CR 2A set aside.[35]

---

[35] See Felt v. McCarthy, 78 Wn. App. 362, 367, 898 P.2d 315 (1995), aff'd, 130 Wn.2d 203, 922 P.2d 90 (1996) ("The more fundamental inquiry is whether 'the assumed possibility of a desired object to be attained by either party forms the basis on which *both parties* enter into it.'" (emphasis added) (quoting Weyerhaeuser Real Estate Co. v. Stoneway Concrete, Inc., 96 Wn.2d 558, 562, 637 P.2d 647 (1981))). "'The object must be so completely the basis of the contract that, as *both parties* understand, without it the transaction would make little sense.'" (emphasis added) (quoting Wash. State Hop Producers, Inc. Liquidation Tr. v. Goschie Farms, Inc., 112 Wn.2d 694,

Fourth, the parties have jointly advised us of recent developments that resulted in Cano's motion to modify the 2018 parenting plan and the trial court's finding of adequate cause to support a trial on that motion to modify. A trial is set for 2020. Because we have vacated the 2018 parenting plan, it is up to Cano to decide how to present her ongoing concerns related to recent events, including, but not limited to, an amended or new motion by Cano for modification of the 2009 parenting plan or any new interim parenting plan. Of course, the trial court on remand has broad discretion to determine how to structure those proceedings in a manner that promotes and serves full consideration of the current best interests of the children.

The remaining issues involve attorney fees. Cano assigns error to the court's award of attorney fees to Hunter. Based on the attorney fee provision in the CR 2A agreement, the court awarded Hunter $6,400 in attorney fees for litigating Cano's motion to vacate and for the arbitration. The CR 2A agreement entitles a party to fees "in the event either party is forced to move this Court for an Order enforcing the agreement as a result of the other part[y's] conduct."[36] To be entitled to fees, the movant must show the other party's conduct necessarily caused them to move to enforce the CR 2A agreement. Because we have vacated the orders appealed by Cano, we conclude the court's award

---

700, 773 P.2d 70 (1989))); see also Felt v. McCarthy, 130 Wn.2d 203, 207-08, 922 P.2d 90 (1996) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 265 (1979)).

[36] CP at 578.

of fees should be set aside as premature. Once there is a final resolution of the pending matters on remand, the trial court will have the discretion to consider an appropriate award of attorney fees. Because the ultimate resolution of this matter is ongoing, we also decline to award attorney fees on appeal. Consistent with RAP 18.1(i), the trial court may include reasonable fees on appeal as part of any award of fees after remand.

Therefore, we reverse and remand for proceedings consistent with this opinion.

WE CONCUR: