**COKER INTERNATIONAL, INC., Plaintiff,**

v.

**BURLINGTON INDUSTRIES, INC., Defendant.**

**Civ. A. No. 6:90–734–17.**

United States District Court, D. South Carolina, Greenville Division.

Sept. 27, 1990.

H.W. Paschal, Jr., Greenville, S.C., for plaintiff.

Carl G. Ferguson, Jack H. Tedards, Jr., Leatherwood, Walker, Todd & Mann, Greenville, S.C., for defendant.

## ORDER

JOE F. ANDERSON, Jr., District Judge.

Plaintiff Coker International, Inc. ("Coker") brings this action seeking rescission of its contract to purchase 221 used textile looms from defendant Burlington Industries, Inc. ("Burlington"), and seeking particularly the return of a "non-refundable down payment" called for by the contract. Burlington has moved for summary judgment as to each of the causes of action advanced by Coker. For the reasons stated herein, the court grants Burlington's motion for summary judgment as to each of Coker's causes of action.

*Factual Background*

In support of its motion for summary judgment, Burlington has submitted two affidavits of David W. Ryan, its Manager, Used Equipment, dated June 15, 1990 and July 27, 1990, respectively. In opposition to the motion, Coker has submitted two affidavits of its president, Jackson R. Coker, dated July 13, 1990 and August 13, 1990, respectively. The affidavits are largely consistent with regard to the underlying facts. To the extent there may be factual disputes, the Court has accepted the facts as asserted by Coker for purposes of this motion.

The undisputed facts show that Coker and Burlington entered a contract whereby Coker would purchase 221 used textile looms from Burlington for a total price of $1,021,000. The parties agree that the contract was evidenced by a two-page Burlington invoice, which provided in relevant part:

> Payment terms: 10% non-refundable down-payment to be received by close of business on January 8, 1988. If not received, Burlington may, at its option cancel this invoice and offer the looms for sale to others.
>
> Balance to be paid prior to removal of looms. Removal to be completed by March 1, 1988.
>
> Sold "as is, where is mill floor."

Coker paid the down payment in the amount of $102,100, but did not pay the balance due by the contract date of March 1, 1988. During the months of March through June, 1988, Coker requested extensions of time and represented that it would pay the balance due and remove the looms

by various dates. During that time, Coker did pay the balance due for a total of 34 looms, and removed those looms from the Burlington plant. Eventually, Burlington declared the contract terminated due to Coker's breach and placed the remaining 187 looms back on the market, retaining the balance of the non-refundable down payment.

One document of particular interest is a letter agreement of May 4, 1988. Burlington had written to Coker on April 13, stating that it was terminating the agreement and retaining the non-refundable down payment. Coker protested, and its attorney wrote to Burlington asking that the parties meet "to attempt to resolve the differences." Coker then proposed a schedule by which it would pay for and remove all looms by the week of June 6, 1988. In response, Burlington proposed the letter agreement of May 4, 1988, in which it reserved its rights under previous defaults but agreed to sell the remaining looms and give credit for the down payment if Coker paid the balance by May 31, 1988, and picked up all the looms by June 10, 1988. Coker signed and returned the letter agreement. There were no conditions concerning Coker's ability to resell the equipment or the problems it was encountering with its contemplated resale.

Coker does not dispute any of these facts. Coker asserts that its non-performance resulted from the failure of its intended resale of the equipment to a customer in Peru due to actions taken by the government of Peru. Coker seeks rescission of the agreement and return of the down payment on several theories which are individually discussed in following sections of this Order.

*Plaintiff's Motion To Amend*

Coker has moved to amend its Complaint to add a third cause of action for breach of a covenant of good faith. Counsel for Burlington stated at the hearing that its opposition to the motion was based solely on its position that the proposed amendment was

without merit, and that Burlington would not oppose the amendment so long as its summary judgment motion was considered to apply to the amended Complaint. The motion to amend the Complaint is therefore granted.

*Force Majeure Clause*

 Coker alleges the contract should be rescinded, and its down payment returned, due to the force majeure clause of the contract, based upon the actions of the government of Peru which prevented Coker's intended resale of the equipment. Accepting as true Coker's assertions regarding the actions of the government of Peru, the force majeure clause would not entitle Coker to rescind the contract or recover the non-refundable down payment.

The contractual force majeure clause provides in relevant part as follows:

> Deliveries may be suspended by either party in case of act of God, ... or any cause beyond the control of such party, preventing the manufacture, shipment, acceptance, or consumption of a shipment of the Goods....

The actions of the government of Peru did not prevent Coker from accepting the looms that were the subject of the contract between Coker and Burlington. The language of the force majeure clause does not excuse nonperformance due to failure of a contract of resale, economic disadvantage resulting therefrom, or even a resulting inability to obtain the money for the goods. Subjective impossibility of performing does not relieve a party from the contract unless the contract so states. *Moon v. Jordan*, 390 S.E.2d 488 (S.C.App.1990).[1] The force majeure clause applies to objective events which directly affect the parties' ability to perform the contract in question, not the ability to make a profit on resale of the goods.

Additionally, the force majeure clause provides only for suspension of deliveries, not rescission of the contract nor return of the non-refundable down payment.

---

1. Both parties have cited South Carolina cases in their memoranda, and neither has suggested that the law of any other jurisdiction should apply in this diversity case or that the choice of law would affect the outcome.

## Frustration Of Purpose

Coker's Complaint does not expressly speak of frustration of purpose. However, it does allege the impossibility of performing its intended contract to resell the looms in question. Construing the allegations of the Complaint liberally in favor of Coker, the first cause of action could be construed to allege frustration of purpose. Coker devoted a major part of its argument at the hearing to this theory.

Both parties have cited and discussed the doctrine of frustration of purpose as stated in *Restatement, Second, Contracts* § 265:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

■ Under this formulation, frustration of purpose, even if applicable, would discharge only the "remaining duties" of Coker, and thus would not affect the completed payment of the non-refundable down payment. Furthermore, the express contractual provision that the down payment would be non-refundable is "language ... indicat[ing] the contrary" and negates the argument that Coker's successful resale of the equipment was an implicit condition of its obligation to make the down payment. It is not the duty of the courts to rewrite the parties' contract, even where a forfeiture may be involved. *McPherson v. J.E. Sirrine & Co.*, 206 S.C. 183, 206, 33 S.E.2d 501, 510 (1945).

■ The argument advanced by Coker was addressed in the case of *Swift Canadian Co. v. Banet*, 224 F.2d 36 (3d Cir.1955). The parties contracted for the sale of lamb pelts which were located in Canada. Prior to delivery, the United States Government issued stricter regulations effectively preventing the importation of the pelts into this country. The buyer argued that the actions of the United States Government should excuse its performance under the contract. The Third Circuit directed the entry of summary judgment for the seller. The contract provided that the sale was "F.O.B. Toronto," and the seller did not assume responsibility for the purchaser's ability to ship the goods to any particular location. Even though one particular resale may have been frustrated, the purchaser was free to sell the goods elsewhere.

The same reasoning applies to the present case. The equipment was sold F.O.B. Bristol, Tennessee, and Burlington had no responsibility for the goods being shipped to any other location. The contract is not conditioned on any resale by Coker. As in the *Swift Canadian* case, Coker had both the possibility of profit and the risk of loss from resale.

The discussion of the frustration of purpose doctrine in *Sechrest v. Forest Furniture Co.*, 264 N.C. 216, 141 S.E.2d 292 (1965), is also instructive. In that case the plaintiff brought suit for defendant's breach of a contract to buy plywood drawer bottoms from the plaintiff. Defendant contended that its performance was excused by the frustration of purpose doctrine when a fire destroyed the defendant's manufacturing plant. The court held that the doctrine did not apply:

> The subject of the contract was the special manufacture of plywood drawer bottoms. They were not burned. The doctrine of frustration would be available to the defendant if it had contracted to sell the factory and it burned before the execution of the deed. In that event the defendant properly could plead frustration in a claim for failure to convey the factory.

141 S.E.2d at 294. In the present case, the actions of the government of Peru may have frustrated Coker's intended resale, but that is not the same as the purpose of its contract with Burlington, which was the conveyance of the looms from Burlington to Coker.

The July 13 affidavit of Jackson R. Coker contains the following:

> We entered negotiations with Burlington and were required by Burlington to tell

them before any contract for purchase of the looms who our purchasers were and where for their famed [sic] purpose of determining whether we were selling the looms to a possible competitor. We informed them of the Peruvian purchasers, and subsequently, they entered into a contract by which we paid them a deposit of $100,000.00 [sic] for a lot of 221 looms.

Accepting this statement as true for purposes of this motion, it discloses that Burlington's interest in Coker's intended resale was limited to a determination of whether the looms would be sold to a possible competitor. Coker does not suggest that the purpose of Burlington's entry into the contract was so that the goods could be resold to a particular customer in Peru, nor that there was any condition placed on the sale regarding Coker's subsequent disposition of the looms. Under the authorities set forth above, and accepting as true Coker's version of the facts, the frustration of purpose doctrine is inapplicable.

The court also notes that Coker entered into the subsequent May 4 letter agreement, after the problems had arisen with regard to the resale in Peru, but no condition was inserted that would have conditioned its obligations on the resale. Regardless of how important the resale may have been to Coker, it never became a condition of the agreement between Coker and Burlington.

*Unconscionability*

■ In its second cause of action, Coker argues that the contractual provision allowing retention of the non-refundable down payment is unconscionable. Whether all or part of a contract is unconscionable is a matter of law to be determined by the court. S.C.Code Ann. § 36–2–302 (1976). The doctrine is not one to be applied to disturb the agreed allocation of risk, even if it should result from superior bargaining power of one party, but rather to prevent oppression and surprise. *See* Comment 1, § 36–2–302. The South Carolina Reporter's Comments to § 36–2–302 are also instructive:

It should be noted that this section only applies where the contract is found to be unconscionable at the time it was made so that even extreme disadvantage felt by one of the parties due to changed market conditions between the time of contract and the time of performance would afford no grounds for relief.

■ Both parties to this contract are commercial corporations. Coker is engaged in the business of buying and reselling textile equipment. The provision of the contract calling for a non-refundable down payment is simple and straightforward, and Coker does not contend it was unaware of the provision. If the provision had been unacceptable to Coker, it could have declined to enter the contract. Instead, it elected to take the risk inherent in such a provision.

The court concludes that there is nothing unconscionable about a contractual provision for a 10% non-refundable down payment under the circumstances of this case.

*Duty Of Good Faith*

■ In the third cause of action added by its amended Complaint, Coker argues that Burlington breached implied covenants and conditions of good faith by failing to disclose to Coker the identity of other possible purchasers of the equipment, with the purpose of retaining the down payment and reselling the equipment at an additional profit. The parties' contract does not require Burlington to assist Coker with resale of the looms, and Coker has presented no authority that such an affirmative non-contractual duty can be imposed under an implied condition of good faith. The parties specifically contracted that the down payment would be non-refundable, and for the court to impose substantive extra-contractual conditions upon Burlington's retention of the down payment would again be an impermissible rewriting of the contract. *McPherson v. J.E. Sirrine & Co., supra.*

The Uniform Commercial Code imposes a general obligation of good faith upon the parties to a commercial contract. *See* § 36–1–203, S.C.Code Ann. (1976). However, the UCC specifically recognizes that the obligation of good faith does not apply to a party's decision to demand payment of "obligations whose very nature permits call

at any time with or without reason." Comment, § 36–1–208, S.C.Code Ann. (1976). Under this provision, for example, a party would be entitled to demand payment of a check. Necessarily the party would be equally entitled to retain monies already paid which were non-refundable by express agreement.

The July 13 affidavit of Jackson R. Coker states that "we are informed and believe" that Burlington refused to disclose other buyers for the equipment in order to resell the equipment themselves and achieve a double recovery. An allegation made on information and belief is insufficient to raise an issue of material fact under Rule 56. *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950). The court also observes from the affidavits of both parties that during approximately 16 months while Burlington had the looms back on the market, it sold only 45 to other parties, while entering into new agreements to sell 142 looms to Coker. Overall, 176 of the original 221 looms were eventually sold to Coker.

The affidavits also disclose that Burlington voluntarily extended its original contract deadline by some four months, and that during the extensions it allowed Coker to make partial payments and obtain individual looms. In the letter agreement of May 4, 1988, Coker raised no challenge to Burlington's right to retain the down payment if the extended deadlines in that agreement were missed. Burlington did not declare the contract terminated for a full month after the deadline for payment established in the May 4 agreement had passed.

Accepting as true all the competent facts presented by Coker, there is no basis upon which it could be concluded that Burlington has breached a duty of good faith in connection with its retention of the non-refundable down payment.

*Burlington's Counterclaim*

Counsel for Burlington at the hearing withdrew the counterclaim asserted by Burlington, advising the court that the matters asserted therein had been resolved.

*Conclusion*

The court has considered each of the theories and causes of action advanced by Coker and has concluded that there is no genuine issue as to any material fact and that Burlington is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED:

1. that the motion of plaintiff Coker to amend the Complaint is granted;

2. that the motions of defendant Burlington for summary judgment as to each of the causes of action asserted by plaintiff Coker are granted; and

3. that the counterclaim of defendant Burlington is dismissed without prejudice.

IT IS SO ORDERED.