THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 MPI South Carolina - 1, LLC, Appellant,
 
 
 
 
 

v.

 
 
 
 Levy Center, LLC, Boyd Capital, LLC,  The Savannah Bank, and The
 McNair Law Firm, P.A., Respondents.
 
 
 
 

Appeal From Jasper County
Marvin H. Dukes, III, Master-In-Equity

Unpublished Opinion No.  2011-UP-065  
 Submitted December 1, 2010  Filed
February 16, 2011

AFFIRMED

 
 
 
 Steven L. Smith, of Charleston, for
 Appellant.
 Jeffrey S. Tibbals, of Charleston, and William
 B. Harvey, III, of Beaufort, for Respondents.
 
 
 

PER CURIAM:  MPI
 South Carolina-1, LLC (MPI) appeals from an order granting Levy Center, LLC,
 and Boyd Capital, LLC's (collectively, Respondents) motion for summary
 judgment, arguing the master-in-equity erred in (1) ruling that unforeseen
 changes in zoning regulations did not make performance of the contracts
 impossible; (2) concluding the change in property regulations did not excuse
 its obligations of performance under the doctrine of frustration of purpose;
 and (3) granting summary judgment because genuine issues of material fact exist
 concerning the degree of Respondents' involvement with the planned
 development.  We affirm.[1]
FACTS
MPI is a South
 Carolina land development firm that contracted with Levy Center to purchase a
 piece of land (Levy Tract).[2] 
 Levy Center (Levy) owned the property, but Boyd Capital (Boyd) had a purchase
 contract, which it assigned to MPI on March 17, 2006.[3]  Boyd completed some preliminary
 development work on the Levy Tract before it assigned its contract with Levy to
 MPI, including due diligence and design of the development.  While MPI was
 continuing the due diligence and design work, Jasper County enacted a temporary
 building moratorium on "all land development as well as on commercial
 construction that was greater than 10,000 [square feet] or produced heavy amounts
 of traffic."  Jasper County intended for the moratorium to last from July
 2006 to November 13, 2007; however, on November 13, 2007, the County amended
 the zoning in the area where the Levy Tract was located.  The new zoning
 requirements mandated a certain lot size that, according to MPI, had the
 practical effect of making its intended development impossible.
MPI filed a
 declaratory judgment action on May 11, 2007, seeking rescission of the contract
 and a full refund of the payments it made into escrow because the contract had
 failed its essential purpose and was impossible to perform.[4]  In their Answers, Levy and Boyd
 alleged MPI was in breach of the contract for failing to make payments on the
 property before the closing date in November 2006.  Boyd also alleged the
 assignment agreement provided all amounts paid by MPI to Boyd for the
 assignment were non-refundable regardless of whether MPI closed on the
 property.  Levy and Boyd both filed motions for summary judgment, which the
 master granted on February 19, 2009, after a hearing on the matter.  This
 appeal followed.    
STANDARD OF REVIEW
When reviewing
 the grant of a summary judgment motion, the appellate court applies the same
 standard that governs the trial court under Rule 56(c), SCRCP, which provides
 summary judgment is proper when there is no genuine issue as to any material
 fact and the moving party is entitled to judgment as a matter of law.  Fleming
 v. Rose, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).  On appeal from an
 order granting summary judgment, the appellate court reviews all ambiguities,
 conclusions, and inferences arising in and from the evidence in a light most
 favorable to the non-moving party below.  Willis v. Wu, 362 S.C. 146,
 151, 607 S.E.2d 63, 65 (2004). 
LAW/ANALYSIS
I.  Impossibility of
 Performance
MPI argues the master erred
 in ruling that unforeseen changes in zoning regulations did not make
 performance of the contracts impossible.  MPI also argues the
 master erred in granting summary judgment because there was substantial
 evidence that the parties were working together toward the same goal, and it
 was immaterial that the parties did not include the purpose in the contract.  We
 disagree.
MPI admits the
 documents did not contain an express provision that specifically stated the
 purpose of the contract was to develop the Levy Tract in a specific manner;
 however, it asserts the doctrine of impossibility of performance does not rest
 exclusively on the language of the contract.  MPI maintains the doctrine has
 been "extended to include situations in which performance as anticipated
 is not merely physically impossible, but so impracticable as to significantly
 alter the understanding of the parties as to the nature of the underlying
 contract."  It further states the occurrence must be unexpected, but it
 does not have to be unforeseeable.  MPI claims the "imposition of a
 building moratorium, and the significant changes in zoning, were unforeseeable
 events, the non-occurrence of which were implicit conditions of the
 contract." 
In Hawkins v.
 Greenwood Development Corp., 328 S.C. 585, 593, 493 S.E.2d 875, 879 (Ct.
 App. 1997), this court held a party to a contract must perform its obligations
 under the contract unless its performance is rendered impossible by an act of
 God, the law, or by a third party, and impossibility must be real and not a
 mere inconvenience.  "A party to a contract cannot be excused from
 performance on the theory of impossibility of performance unless it is made to
 appear that the thing to be done cannot by any means be accomplished, for if it
 is only improbable or out of the power of the obligor, it is not deemed in law
 impossible."  Id. (quoting 17A Am. Jur. 2d Contracts § 673,
 at 681 (1991)).  
Also, in Coker
 International, Inc. v. Burlington Industries, Inc., 747 F. Supp. 1168, 1170
 (D.S.C. 1990), aff'd, 935 F.2d 267 (4th Cir. 1991), the district court
 held that "[s]ubjective impossibility of performing does not relieve a
 party from the contract unless the contract so states."  Further, in Opera
 Co. of Boston v. Wolf Trap Foundation for Performing Arts, 817 F.2d 1094,
 1102 (4th Cir. 1987), the court held a party seeking to rely on the defense of
 impossibility of performance must establish "(1) the unexpected occurrence
 of an intervening act, (2) such occurrence was of such a character that its
 non-occurrence was a basic assumption of the agreement of the parties, and (3)
 that occurrence made performance impracticable."
Pursuant to its
 assignment from Boyd, MPI's duties were to pay the earnest money and purchase
 price, accept the contract of sale, and accept title to the property at
 closing.  Therefore, MPI cannot argue any action taken by Jasper County
 affected MPI's ability to perform its duties or its ability to close on the
 property.  In addition, the temporary building moratorium did not create an
 impossibility of performance of the contract because MPI continued to go
 forward with the contract even after learning of the moratorium, and neither
 Boyd nor MPI submitted any development plans to Jasper County for consideration
 or approval.  Further, the assignment required that Boyd convey to MPI all its
 rights, title, and interest in and to the contract of sale, not the property,
 in exchange for payments made by MPI.  Boyd fulfilled its obligations pursuant
 to the agreement, and MPI admitted that Boyd did not breach any term of its
 agreement with MPI.  Tom Small, vice president of MPI, also admitted MPI did
 not provide any written notice of termination of the contract for any
 justifiable reason within the contract.
Small
 acknowledged during his deposition that the contract did not contain any
 language or any other evidence that Levy intended for a particular use or density
 for the property, and the contract did not condition performance under the
 contract upon successful development, zoning, or county approval.  Moreover,
 prior to and in conjunction with Boyd's assignment of the contract to MPI, Boyd
 and Levy amended the contract twice, and MPI and Levy amended the contract once
 more after the assignment.  These amendments to the contract did not contain
 any contingencies or conditions that would excuse MPI's performance under the
 contract in the event the County altered the zoning of the property in any
 manner.
MPI had not completed a
 conceptual plan of development for the property at the time Jasper County
 issued its moratorium ordinance.  Prior to assigning the contract to MPI, Boyd performed due
 diligence and created a conceptual master plan, which it provided to MPI;
 however, there was no evidence that MPI intended to adopt Boyd's master plan
 because MPI separately initiated its own development plans, hired its own land
 planner and market analysis firm, and was preparing a new land plat.  In fact,
 James Wolfe, principal member of Boyd, testified Small wanted to increase the
 density by decreasing the size of the lots from Boyd's conceptual plan.
Additionally, MPI
 admits that after the County lifted the moratorium, it could have completed the
 purchase of the property and developed it for less of a profit.  MPI also did
 not submit even a conceptual plan for review to Jasper County; therefore, MPI
 does not know with certainty that the County would have denied its development
 plans.  Further, had MPI submitted even an incomplete conceptual master plan
 prior to the cut-off date, it could have avoided the imposition of the building
 moratorium.[5] 
 Tedd Moyd, who served as Jasper County's Planning and Zoning Coordinator at the
 time the County enacted the ordinance, testified the ordinance exempted parties
 from the moratorium if they filed application for conceptual approval before
 July 13, 2006, even if the application was incomplete.
Therefore, we
 find the master properly granted Respondents' motions for summary judgment
 because, viewed in the light most favorable to MPI, the evidence showed the
 zoning changes did not make performance of the contract impossible, and the
 contract did not condition performance under the contract upon successful
 development, zoning, or county approval.  In addition, the evidence did not
 show the parties intended that a particular use or density for the property was
 a fundamental premise of the contract.       
II.  Doctrine of Frustration of Purpose
MPI argues the master erred
 in concluding the change in property regulations did not excuse its obligations
 of performance under the doctrine of frustration of purpose.  We disagree.
Specifically, MPI asserts the
 master erred in relying on Felt v. McCarthy, 922 P.2d 90 (Wash. 1996), because
 the Felt court did not rely on the foreseeability of the zoning changes,
 but on the purchaser's own acts.  MPI contends the parties conditioned the purchase
 agreement in this case entirely and exclusively on the shared intent that the
 property was to be developed as a planned unit development and that development
 was rendered impossible through the actions of the governmental agency.
In Felt, the defendants
 claimed frustration of purpose excused them from making further payments on their
 note because newly-enacted wetlands regulations prevented them from developing
 the land as a business park.  Id. at 91.  The defendants owned some land
 and sought to purchase an additional nine acres.  Id.  They requested to
 have 123 acres, including the nine they wanted to purchase, rezoned as a
 business park, but the county denied their request because they did not own all
 the property they wanted rezoned.  Id.  Even though they were unable to get
 the property rezoned, the defendants purchased the nine acres, and the sales
 contract did not place any conditions on the sale.  Id.  About a month
 later, the Army Corp of Engineers released a manual delineating protected
 wetlands, and the county ultimately adopted regulations that rendered the land
 useful only as a single home site or as open space.  Id. at 91-92.  The
 defendants defaulted on their note, and as an affirmative defense, they argued
 the court should excuse all unpaid portions of the note due to frustration of
 purpose.  Id. at 92.  The court held the frustration of purpose doctrine
 was unavailable because for the doctrine to apply, the purpose that was
 frustrated must have been a principal purpose of that party in making the
 contract, the frustration must be substantial, and the non-occurrence of the
 frustrating event must have been a basic assumption on which the parties made
 the contract.  Id. at 93.  The court stated that had the defendants
 wanted to condition the real estate deal upon the successful development of a
 business park, they clearly had the power to include that condition in the
 contract; however, they failed to assign any risk of the business park failure
 to the seller.  Id.  Therefore, the court found it should not correct the
 defendants' mistake by using the frustration doctrine to read such conditions implicitly
 into the sales contract.  Id.
The Felt court further
 held a reduction in market value was insufficient in and of itself to support a
 finding of frustration.  Id. at 94 (citing Restatement (Second) of
 Contracts § 265 cmt. a (1979) ("It is not enough that the transaction has
 become less profitable for the affected party or even that he will sustain a
 loss.")).  Likewise, in Duke
 Power Co. v. South Carolina Public Service Commission, 284 S.C. 81, 89, 326
 S.E.2d 395, 400 (1985), our supreme court held that "a party to a contract
 should not be given relief from the requirements of the contract simply because
 it proved to be less favorable than an alternative provision would have been."  
Similarly, in Coker
 International, the South Carolina District Court found the actions of the
 government of Peru may have frustrated Coker's intended resale of the equipment
 to a customer in Peru; however, that was not the purpose of its contract with
 Burlington, which was the conveyance of the looms from Burlington to Coker. 
 747 F.Supp. at 1171.  The court also noted the parties did not insert a condition
 into the agreement that would have conditioned Coker's obligation to pay on the
 successful resale of the equipment.  Id.
As stated in Felt and Coker
 International, MPI could have negotiated a provision in the contract to
 provide protection against an unfavorable zoning change.   Small admitted the contract did not
 contain any language or any other evidence that the contract conditioned
 performance under the contract upon successful development, zoning, or county
 approval.  Anthony Pasquinelli, one of the owners of MPI, testified that MPI
 knew zoning changes could occur and it could have protected itself by including
 the conditions in the contract, but did not do so.  Additionally, although Boyd
 and Levy amended the contract twice, and MPI and Levy amended the contract once
 more after the assignment, none of the amendments contained any contingency or
 condition that would excuse MPI's performance under the contract in the event
 of a zoning change.
Further, MPI's claim only raises a property
 valuation issue, and MPI admits it could have purchased the property and
 developed it for less of a profit.  Moreover, MPI never submitted even a
 conceptual plan for review to Jasper County; thus, MPI does not know with
 certainty that Jasper County would have denied their development plans.  If MPI
 had filed even an incomplete application for conceptual approval with the
 County prior to July 13, 2006, it could have avoided the imposition of the
 building moratorium.  Small testified that neither MPI nor Boyd formally
 submitted any development plans to Jasper County for approval.
Even if MPI could prove the
 change in property regulations excused its obligations of performance under the
 doctrine of frustration of purpose, the clear terms of the assignment state the
 payments made by MPI were non-refundable, regardless of whether MPI closed on
 the purchase of the property.  In
 his deposition, Small testified he knew the amounts paid under the contract
 were non-refundable, regardless of whether MPI purchased the property.  Therefore,
 the clear terms of the contract are evidence the parties did not share an
 intent that MPI's inability to develop the property in a specific manner would
 permit the return of the amounts paid by MPI.  Further, MPI cites Restatement
 (Second) of Contracts § 265 for authority regarding frustration of purpose;
 however, that section provides that when a purpose is frustrated by
 unanticipated events, only its remaining duties to render performance are
 discharged, not those duties already performed.  
In Coker International,
 the South Carolina District Court held that even if the frustration of purpose
 doctrine applied, it would only discharge Coker's remaining duties and would
 not affect the completed payment of the non-refundable down payment.  747
 F.Supp. at 1171.  The court further noted the express contractual provision
 provided the down payment would be non-refundable, which negated Coker's
 argument that the successful resale of the equipment was an implicit condition
 of its obligation to make the payment.  Id.  Thus, even if MPI could demonstrate facts
 sufficient to meet the requirements of the
 doctrine of frustration of purpose, the doctrine would only excuse MPI of its
 remaining duties.  The master
 did not compel MPI to perform any of its remaining duties under the contract,
 and Boyd did not seek specific performance or attempt to make MPI close on the
 purchase of the property.
Therefore, we
 find the master properly granted Respondents' motions for summary judgment
 because, viewed in the light most favorable to MPI, the evidence showed MPI did not meet the requirements for the doctrine of
 frustration of purpose, and was not excused from its obligations of
 performance.
CONCLUSION
Accordingly, the master's order is
AFFIRMED.
FEW, C.J.,
 SHORT and WILLIAMS, JJ., concur.

[1]  We decide this case without oral argument pursuant
 to Rule 215, SCACR.
[2]  MPI is a subsidiary of a national corporation
 engaged in the business of building residential and mixed-use developments.
[3]  MPI initially
 named the Savannah Bank and the McNair Law Firm as defendants in the action,
 but the court dismissed both parties from the case when they deposited the
 funds held by them in escrow with the Jasper County Clerk of Court.
[4]  MPI filed the action in the court of common pleas, and
 by consent order, the parties referred the case to the master-in-equity.
[5]  Ordinance R06-27 exempted properties for which parties
 had submitted development plans for approval by July 13, 2006.  Jasper County,
 S.C., Ordinance R06-27 (September 18, 2006).